**NASHVILLE TRUST CO. v. COTROS et al.**
No. 8641.

Circuit Court of Appeals, Sixth Circuit.
June 5, 1941.

William L. Cary, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and William L. Cary, Sp. Assts. to Atty. Gen., and Horace Frierson, Jr., and A. O. Denning, both of Nashville, Tenn., on the brief), for appellant.

R. L. Bartels and F. E. Hagler, both of Memphis, Tenn., for appellees.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

In a trial to the court below without a jury, the appellees recovered a judgment for taxes assessed against them as an association within the meaning of § 801 of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Code, § 3797, following their payment to the deceased Collector and the denial of a timely claim for refund. The appellant, as executor under the will of the collector, challenges the judgment.

There is no controversy with respect to the essential facts and the issue is one of law. In August, 1933, the Lincoln Oil Company, Inc., a Louisiana corporation engaged in developing oil property, having acquired through lease mineral rights in Louisiana land, conveyed to the three appellees, George Cotros, John A. Papageorge, and Nick Taras of Memphis, Tennessee, an undivided ⅓ interest in the leasehold. The consideration for the conveyance was that the appellees would defray ⅓ of the necessary expenses incurred by the oil company in drilling and developing oil wells upon the property. Should oil be discovered, maintenance, operation and production expenses were to be paid from oil revenues. It was estimated that the cost of discovery wells would be $60,000, and so $20,000 was advanced by the appellees to the oil company. Drilling operations began soon after the conveyance, but before they were completed the appellees decided they did not care to hazard the entire $20,000 and gave some of their friends an opportunity to share in the profits. More than 20 of them agreed to participate, and on April 17, 1934, the appellees executed an agreement wherein it was provided that they should become trustees for the benefit of all other parties whose names were annexed to the instru-

ment, should have full power and control over the leasehold interest, manage it as they saw fit, and sell or transfer it at any time and for any amount which to them should seem right and proper. The other parties to the instrument were to be entitled to an interest in the net profits derived from the production of oil, gas, or minerals from the leasehold interest, to the extent that the amounts set opposite their names bore to the sum of $20,000, and the appellees to be entitled to share equally in the remaining profits. The amounts contributed by the parties to the instrument other than the appellees, aggregated $4,150. Subsequently, at least two of them transferred their interest in third persons, and although they had been furnished with no certificates or evidences of ownership, the transfers were recognized.

After the oil company had completed its first well two additional wells were drilled, and on February 14, 1934, the appellees executed a power of attorney authorizing the oil company to transact all necessary business pertaining to the drilling of wells, payment of expenses and collection of revenues. All of the wells were drilled by the oil company without the active assistance of the appellees who had no part in the operation except to receive their share of the net revenues and make pro rata distribution to the parties to the trust agreement. The appellees maintained no office or equipment, and kept no books. But one meeting of the signatories was ever held. This was to consider an offer of the oil company to purchase their interest in the leasehold, an offer which was declined. On February 4, 1938, the Collector of Internal Revenue collected from the appellees, capital stock tax, interest and penalties which were paid under protest that the taxpayers did not constitute a corporation or association subject to corporate income, excess profits or federal capital stock taxes. The District Court held that the appellees had not formed and were not an association within the meaning of § 801, and granted their motion for judgment.

Section 801 of the Revenue Act of 1934 defines the term "corporation," when used in the Act, to include associations. Treasury Regulation 86, promulgated under the Revenue Act of 1934, recites in Art. 801-802, "the term association is not used in the Act in any narrow or technical sense. It includes any organization, created for the transaction of designated affairs, or the attainment of some object, which, like a corporation, continues notwithstanding that its members or participants change, and the affairs of which, like corporate affairs, are conducted by a single individual, a committee, a board, or some other group, acting in a representative capacity. It is immaterial whether such organization is created by an agreement, a declaration of trust, a statute, or otherwise." Art. 801-3 distinguishes the ordinary trust created by will or declaration for the purpose of protecting or conserving property from an arrangement by which legal title is conveyed to trustees to hold and manage property with the view to income or profit for the benefit of beneficiaries, and designates the latter as affording a medium whereby profit-seeking activity may be carried on through a substitute for a voluntary association, joint-stock company, or corporation, thus obtaining the advantages of these forms of organization without their disadvantages. The Article recites, "If a trust is an undertaking or arrangement conducted for income or profit, the capital or property of the trust being supplied by the beneficiaries, and if the trustees or other designated persons are, in effect, the managers of the undertaking or arrangement, whether the beneficiaries do or do not control them, the beneficiaries are to be treated as voluntarily joining or cooperating with each other in the trust, just as do members of an association, and the undertaking is deemed to be an association classified by the Act as a corporation."

The history of this provision in the Revenue Act, the development of the regulations designed to clarify and define what is meant by the term "associations," and the validity of such regulations, are fully discussed in the series of cases concurrently decided by the Supreme Court in 1935. Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Swanson et al., Trustees v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering, Commissioner v. Combs et al., Trustees, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275; and Helvering, Commissioner v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278. The opinion in the Morrissey case lists (296 U.S. page 359, 56 S. Ct. 289, 80 L.Ed. 263) the salient features of a trust when created and maintained as a medium for the carrying on of a business enterprise and sharing its gains, which may be regarded as making it analogous to a corporate organization. We recently recited these features in Commissioner of

Internal Revenue v. Gibbs-Preyer Trusts, 6 Cir., 117 F.2d 619, and need not repeat. In our judgment, and notwithstanding the effort of the taxpayers to differentiate their status from those adjudicated, the salient features of a trust pointed to in the Morrissey case as denoting a medium for carrying on a business enterprise, are all here present and require the classification of the appellees as an association. Indeed, except for a number of immaterial circumstances to be presently discussed, the instant case could well be decided, without argument, solely upon the authority of Helvering v. Combs, supra, wherein a common enterprise under a trust instrument for the acquisition of an oil lease, the drilling and operation of an oil well, the sale of its produce and distribution of income among the beneficiaries, was held taxable as an association under the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 145 et seq.

 The court below held, and the taxpayers urge that the relation of the parties under the trust instrument of April, 1934, created a tenancy in common with respect to the fractional interest in the leasehold estate under state law. The conclusion is unimportant, for where the Act of Congress has its own criteria it is controlling irrespective of local law. Weiss v. Wiener, 279 U.S. 333, 337, 49 S. Ct. 337, 73 L.Ed. 720. The present case is not to be distinguished from the Combs case by the fact that the legal title to the property was in the appellees as individuals and not as trustees and remained so after the formation of the trust. By virtue of the agreement, the title, however held in the first instance, vested in the appellees as trustees, and equity could have compelled its transfer had it become important. It is said that there were no certificates of ownership issued, as was done by the trust adjudicated in the Combs case. But as pointed out in Morrissey v. Commissioner, supra [296 U.S. 344, 56 S.Ct. 296, 80 L.Ed. 263], "the test of an association is not to be found in the mere formal evidence of interests or any particular method of transfer." It is urged that in the instant case there was no effort or intention to limit the personal liability of any of the parties to the agreement, but that was likewise true in the Combs case, as an examination of an unchallenged copy of the trust instrument therein involved, discloses. That the beneficiaries in the present case came into the arrangement after the agreement was made with the oil company, is not a distinguishing feature. It is the character of the activity at the time the tax liability is asserted to arise that controls.

The only other point of differentiation worthy of comment is that in the present case the trustees were not themselves actively engaged in development of oil wells or their management. They had, by means of the power of attorney given to the oil company, entrusted all operations to it. The point will not bear analysis. There can be no doubt that the oil company was engaged in a business operation for profit. To the extent of the interest owned by the trust, the oil company was its agent through its power of attorney. The trustees might have undertaken this activity themselves. They did not choose to do so, and it is of no significance that the power of attorney antedated the trust instrument. The power of attorney was revocable.

The judgment is reversed.