COMMISSIONER OF INTERNAL REVE-
NUE v. FORTNEY OIL CO., COUN-
TY FARM LEASE.

SAME v. TOWNLINE OIL CO.

Nos. 8702, 8703.

Circuit Court of Appeals, Sixth Circuit.

Feb. 7, 1942.

F. E. Youngman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Don M. Harlan, of Detroit, Mich., for respondents.

Before SIMONS, ALLEN, and McAL-LISTER, Circuit Judges.

ALLEN, Circuit Judge.

The principal question presented by these petitions to review decisions of the Board of Tax Appeals is whether respondents are associations within the meaning of § 1001(a)(2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 3797(a) (3), and thereby subject to income tax as corporations. The two cases present substantially identical facts and were decided by the Board in opin-

ions which treated the controlling legal questions as the same. The Commissioner determined deficiencies upon the ground that the respondent organizations were associations. The Board in each case decided that respondents were not taxable as associations.

The applicable sections of the Revenue Act and of the regulations promulgated thereunder read as follows:

Revenue Act of 1936, § 52, 26 U.S.C.A. Int.Rev.Code, § 52.

"Every corporation subject to taxation under this title [chapter] shall make a return * * *."

Section 1001(a) (2).

"The term 'corporation' includes associations, joint-stock companies, and insurance companies."

Treasury Regulations 94, promulgated under the Revenue Act of 1936, Art. 1001-2.

"The term 'association' is not used in the Act in any narrow or technical sense. It includes any organization, created for the transaction of designated affairs, or the attainment of some object, which, like a corporation, continues notwithstanding that its members or participants change, and the affairs of which, like corporate affairs, are conducted by a single individual, a committee, a board, or some other group, acting in a representative capacity. It is immaterial whether such organization is created by an agreement, a declaration of trusts, a statute, or otherwise. * * *"

The amounts are not in controversy, and the facts are stipulated, the questions presented relating to the legal effect of certain contracts presented in evidence. In No. 8702, the Fortney Oil Company, a Michigan corporation which held a lessee's interest in a certain oil and gas lease, assigned various fractional undivided shares amounting in all to about two-thirds of its interest in the leasehold, to thirteen individuals under separate identical agreements which gave the company as "trustee" broad power for the entire life of the agreement to manage and control the drilling and operating of oil and gas wells on the premises covered by the lease and to pay all expenses involved in such development and operation. Reasonable compensation for its services was to be allowed to the company, which agreed to render a monthly account and to distribute any income not used for expenses or further development, such distribution to be made

to the respective assignees as their interests should appear. Additional assessments could be made against the assignees whenever necessary for the drilling of any well or for other lease operations. In the event that any assignee should elect not to participate in the expenses of any future development, he would be barred from participation in the profits from any additional well and his interest in the undrilled portion of the lease would revert to the company. In addition to the foregoing provisions the assignments contained the following:

"5th. It is understood as to his proportionate share the Assignee herein assumes the obligations and agreements herein contained, and the obligations and agreements of the Assignees in the certain oil and gas lease covering the acreage herein described, but that nothing herein contained shall be construed as constituting the operations under this or any other part assignment of said lease, a mining partnership, or other than a venture by tenants in common of said leasehold estate.

"6th. The trustee shall have the right to expend the money contributed by the assignee under this assignment for the payment of said lease and drilling the well or wells.

"7th. This agreement shall be binding upon the parties hereto and their successors and assigns. * * *"

In No. 8703, which likewise involves oil and gas property in Michigan the assignor was an individual. The assignees were to be paid one-half of the gross proceeds from sales and the balance was to be placed in trust in a bank out of which a board of trustees headed by the assignor was to pay expenses and account for the balance, the material provisions of the agreements are identical with those in No. 8702. They include paragraphs in every material respect identical with those above quoted.

The Board of Tax Appeals held in each case that the instruments effected conveyances of interests in land and created the relation of tenants in common, and that no centralized ownership resided in any entity. It concluded that the relationship between the assignors and the respective assignees was that of principal and agent, and that no association existed in either case within the meaning of the Revenue Act.

The agreements are short and in general terms, and many of the rights and obliga

tions of the parties are not covered by express provisions. Since assignment of each interest was subject to the various exceptions, conditions and provisions agreed upon, an assignee could not withdraw from either of the ventures without loss of his interest in the particular leasehold involved. The agreements expressly provided that failure to pay a proportionate share of any assessments necessary for the continuation of development would result in reversion to the assignors of the assignee's interest in the undrilled portion of the property. Transfer of an assignee's interest to a successor or assign would not affect the continuity of the ventures. Unified control of the property in each case was thus complete and its continuity was assured. There can be no doubt that operations were conducted for profit and that the assignees were entitled to share in the gains of the enterprises. Under Treasury Regulations 94, Art. 1001–2 this clearly constituted an association. Moreover, each contract embodied a definite agreement of association between the individual assignees, for, in the provision of the contracts above quoted, each assignee as to his proportionate share assumed not only the obligations contained in the contract with reference to his own fractional interest, but also assumed "the obligations and agreements of the Assignees in the certain oil and gas lease covering the acreage herein described." Under such a provision it is impossible for one assignee to maintain that he is not associated with the other assignees in the common enterprise. It does not appear that any comparable provision was present in Commissioner v. Horseshoe Lease Syndicate, 5 Cir., 110 F.2d 748, certiorari denied Helvering v. Horseshoe Lease Syndicate, 311 U.S. 666, 61 S.Ct. 24, 85 L.Ed. 427, or Commissioner v. Rector & Davidson, 5 Cir., 111 F.2d 332, certiorari denied Helvering v. Rector & Davidson, 311 U.S. 672, 61 S.Ct. 33, 85 L.Ed. 432, on which the respondents rely. It does appear that there was no arrangement in either of those cases to insure continuity of the centralized management. These two features distinguish them from the instant cases.

■■ The Board in holding that a mere agency relationship was created between the assignors and their assignees relied upon decisions involving Texas leases, and also upon Jaenicke v. Davidson, 290 Mich. 298, 287 N.W. 472, which held that the negotiation of assignments of oil and gas leases by a broker was not a joint enterprise as contended, but a transaction by principal and agent. But this decision plainly does not govern here where no assignee at any time had the right to operate the property and hence could not delegate such authority to an agent. The parties in each case endeavored by the contract to exclude any relationship of partnership and to fix the status of the operation as "a venture by tenants in common of said leasehold estate." But this contract could not control the status nor are we bound in this instance by the decisions of state courts, for the Act of Congress fixing the tests and establishing the definitions for the word "association" controls entirely as to questions of federal taxation. Hecht et al., Trustees, v. Malley, Collector, 265 U.S. 144, 161, 44 S.Ct. 462, 68 L.Ed. 949; Weiss v. Wiener, 279 U.S. 333, 337, 49 S.Ct. 337, 73 L.Ed. 720.

Neither does Lewis & Co. v. Commissioner, 301 U.S. 385, 57 S.Ct. 799, 81 L.Ed. 1174, require affirmance of the Board's decisions. There one individual having full ownership and power of disposition over property, had conveyed it to a trustee under specified trusts for the benefit of himself and an agent to whom he delegated the limited authority to subdivide and sell the land. The trustee had no power to participate in the conduct of the selling enterprise, and the agent's compensation was limited to commissions based upon sales, any sales organization to be employed at his own expense. There was no evidence of a plan to share in the gains of a business enterprise.

■■ The present cases fall rather into the category of Nashville Trust Co. v. Cotros, 6 Cir., 120 F.2d 157, and Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L. Ed. 275. Whatever the formal character of the relationship established by the Fortney and Townline assignment contracts, they provided an efficient medium for the conduct of business and the sharing of its gains. Morrissey v. Commissioner, 296 U. S. 344, 357, 56 S.Ct. 289, 80 L.Ed. 263. There was continuity of life and centralized control. The assignees contributed money to be used for the business purpose of developing the oil and gas resources of a tract of land and ipso facto became associated in the common business enterprise according to the terms of the arrangement. Helvering v. Combs, supra, 296 U.S. at page 368, 56

S.Ct. 287, 80 L.Ed. 275. The business was conducted under a general power of direction which made the form and mode of procedure similar to that of corporations. Cf. Burk-Waggoner Oil Ass'n v. Hopkins, 269 U.S. 110, 114, 46 S.Ct. 48, 70 L.Ed. 183. The units of fractional interests were the equivalent for all practical purposes of transferable certificates of interest and the ·assignees received payments in the nature of dividends. The fact that no formal certificates of ownership were issued is unimportant. Nashville Trust Co. v. Cotros, supra, 120 F.2d at page 159. There was an effort to limit personal liability by the agreement among the parties that the operation should not be construed as constituting a partnership. This record presents a stronger case in favor of holding that the organizations were associations within the statutory meaning than Thrash Lease Trust v. Commissioner, 99 F.2d 925, 927 where the Ninth Circuit sustained the determination of a deficiency. In accord also is Wellston Hills Syndicate Fund v. Commissioner, 8 Cir., 101 F.2d 924. The fact that under state law the organizations are not legal entities, that they do·not hold title to property, and that they may constitute a tenancy in common is not controlling. Burk-Waggoner Oil Ass'n v. Hopkins, supra, 269 U.S. at page 114, 46 S.Ct. 48, 70 L.Ed. 183; Hecht et al., Trustees, v. Malley, Collector, supra, 265 U.S. at page 161, 44 S.Ct. 462, 68 L.Ed. 949. It follows that respondents were taxable as corporations.

Our decision in Cleveland Trust Co. v. Commissioner, 6 Cir., 115 F.2d 481 does not conflict with this holding. There one of the essential attributes of a taxable association was absent because the property involved was not operated for profit and the trust which held it was not carrying on a business but was merely receiving and distributing the proceeds of investment.

The pleadings before the Board alleged that the Commissioner had erred in determining deficiencies in excess profits taxes without affording the respondents an opportunity to declare a value for their capital stock, and in No. 8702, that the Commissioner's allowance for depletion had not been adequate. These questions were not considered by the Board, are not presented in the evidence, and cannot be considered here.

The decisions are reversed and the cases are remanded for further proceedings consistent with this opinion.