## COMMISSIONER OF INTERNAL REVENUE v. NEBO OIL CO., TRUST.

### No. 2320.

Circuit Court of Appeals, Tenth Circuit.

Feb. 18, 1942.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

T. Murray Robinson, of Oklahoma City, Okl., for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals.

In the year 1928, W. H. Clement, D. Replogle, and William G. Johnston acquired an oil and gas lease, known as the Nebo-Little Lease, on certain lands located in Oklahoma County, Oklahoma. Each contributed one-third of the cost of the lease and acquired a one-third interest therein. Title was taken in the name of an agent and immediately transferred to Clement, who held it as trustee for himself and his associates.

The lease was located in undeveloped territory. A producing well two miles distant from the lease was brought in in December, 1928. From 1928 to 1932, Clement and his associates, without avail, attempted to dispose of the lease. In 1932, the adjacent territory had been developed and an offset well had been drilled on the easterly side of the lease. The lessor demanded development and threatened cancellation if drilling operations were not commenced immediately. Thereafter, in 1932, Clement and his associates entered into a contract with a drilling company to drill a well on the lease for an agreed consideration of $185,000, payable solely out of three-fourths of seven-eighths of the oil produced. On December 12, 1932, while drilling operations were in process, Clement executed a trust agreement conveying the lease to W. H. Clement, as sole trustee. The interest granted to the drilling company was excepted from the conveyance. The trust instrument provided that the trust should be known as the Nebo Oil Company. It limited the trust to 21 years and declared Replogle, Johnston, and Clement to be the beneficiaries of the trust, each to the extent of a one-third interest. It vested in the trustee broad power and authority to hold, manage, operate, dispose of, and deal with the trust property for the benefit of the beneficiaries "with as full discretionary power and authority * * * as he would have if he were the sole and absolute owner of said property in fee simple."

It authorized the trustee to convert any trust property into money and distribute the net proceeds thereof ratably to the beneficiaries, or in his uncontrolled discretion to defer such conversion or distribution but not beyond a period of 21 years from the date of the instrument. It authorized the trustee to reinvest funds of the trust in other property and in his uncontrolled discretion to trade or exchange any portion of the trust property for other property.

It provided, in the event of the resignation or incapacity of the trustee, for the appointment of a new trustee by any two of the beneficiaries.

It provided that the liability of the beneficiaries on account of any express or implied contract made by the trustee in behalf of the trust estate, or upon account of any tort committed by the trustee, his agents, or servants, in anywise connected with the trust or its administration, should be limited to the funds and property of the trust.

It further provided that a beneficiary might transfer all his interest to any other person, firm, or corporation, but prohibited the conveyance of less than an entire interest of any beneficiary.

On November 10, 1933, at the request of the beneficiaries, Clement, as trustee, executed an instrument limiting his powers as trustee. It provided that on December 12, 1935, and annually thereafter, the trustee should make an accounting to the beneficiaries setting up the status of the property and the assets and liabilities; that the trustee should refrain from reinvesting the funds of the trust estate, except in improvement, development, and operation of the leaseholds owned by the trust; that on each annual accounting the cash surplus should be distributed to the beneficiaries, except that the trustee should retain such sum as he should deem to be reasonably necessary for future expenditures on the lease and for maturing obligations, and a prudent amount to provide against unforeseen injury to the lease.

On February 14, 1935, the trust instrument was further modified by a written instrument. It provided that the trust should remain in force for a period not to exceed three years from the date of the amendment, but that it might be extended for a period which, with the time already elapsed, should not exceed 21 years, by an extension signed by the trustee and all the beneficiaries; that when the trust should terminate, the trustee should execute and deliver to each beneficiary a sufficient instrument in writing to transfer to such beneficiary his respective interest in the trust property; that the trustee should furnish to the beneficiaries quarterly statements showing gross income and all disbursements, and after payment of operating expenses and indebtedness against the trust, should disburse the

net profits, if any, quarterly to the beneficiaries; that the trustee should not have power to purchase real property or other oil and gas leaseholds, but should not be restricted in purchasing supplies and equipment necessary to operate the trust property; should not have power to sell or mortgage any part of the oil and gas leaseholds held by the trust; and should not have power to drill additional wells on the trust property; and that the compensation of the trustee should be $300 per month.

On October 7, 1933, an oil and gas lease, known as the Odebrecht Lease, on land situated near the lands covered by the Nebo-Little Lease was conveyed by Clement to the Nebo Oil Company. The amendment of February 14, 1935, ratified the conveyance of the Odebrecht Lease, and declared it to be a part of the trust property.

After the execution of the trust agreement, the trust was administered at the offices used by the associates. The trust issued no trust certificates, had no officers or seal, and held no regular meetings. It had no employees other than those who worked on the leasehold. The trustee disposed of routine matters without consulting with the other beneficiaries, but on questions of policy, such as the drilling of new wells, consulted with the other two beneficiaries. The original contribution of the beneficiaries to the trust in cash was $100. During the period from 1932 to 1934, Replogle and Clement made advances to the trust in cash and guaranteed contracts, bank loans, and trading accounts of the trust. The advances and guarantees aggregated $90,000.

The first well on the lease was completed on December 15, 1932, and during the following 18 months, three additional wells were drilled at such times as drilling of offset wells made them necessary. No wells were drilled during the years 1934 to 1937, inclusive.

The Nebo-Little and Odebrecht Leases were the only leases acquired by the trust. It owned no other properties. The funds received by the trust from oil production were either applied to the cost of further development of the leases or were distributed to the beneficiaries. During the taxable years there was no transfer of the trust interests of the beneficiaries nor any attempt to sell beneficial interests.

The trustee reported the income of the trust for the years 1934, 1935, 1936, and 1937 as a fiduciary, showing distribution thereof to the beneficiaries. The latter returned the distributions in their taxable income. The trust filed capital stock tax returns and paid taxes thereon for the years 1934 to 1937, inclusive. Suit for refund of these taxes had been brought and was pending at the time of the hearing before the Board.

The Commissioner ruled that the trust was an association and not a pure trust and proposed deficiencies accordingly. The Board held that the trust was a pure trust, and not taxable as an association.

Section 801 (a) (2) of the Revenue Act of 1934, 48 Stat. 680, 771, 26 U.S.C.A.Int. Rev.Acts, page 790, provides: "The term 'corporation' includes associations * *."

■ The test is resemblance to, not identity with, corporate organizations. Morrissey v. Commissioner, 296 U.S. 344, 357, 56 S.Ct. 289, 80 L.Ed. 263.

The following attributes analogous to those of corporate organizations were present: Title to the property was held by the trustee during the existence of the trust. Provision was made for a successor-trustee, making the trust a continuing entity. Centralized management was vested in the trustee as representative of the beneficial owners. The enterprise was secured from termination or interruption by the death of any owner of a beneficial interest. Transfer of an entire beneficial interest could be made without affecting the continuity of the enterprise. Personal liability of the beneficiaries, either for contract or tort, was limited to their beneficial interests in the trust.

Even after the limitation on the powers of the trustee on November 10, 1933, and on February 14, 1935, essential powers of management for the operation of the leases remained in the trustee. He still retained authority to operate the property, to purchase necessary supplies and equipment, to sell, exchange, or dispose of any product from any oil or gas well, to sign division orders, to begin and defend legal proceedings, employ attorneys, and compromise or arbitrate claims, and to collect the proceeds from the sale of oil and gas, and distribute the net proceeds after setting aside what he deemed reasonably necessary for future expenditures, maturing obligations, and for contingencies. He was not reduced, as the Board said, to a mere collection and disbursement agent.

■ Hence, we conclude the resemblance to a corporate organization was sufficient to warrant the Commissioner in treating the

trust as an association. See Morrissey v. Commissioner, supra; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 371-373, 56 S.Ct. 285, 80 L.Ed. 278; and Commissioner v. Fortney Oil Co., 6 Cir., 125 F. 2d 995, decided February 7, 1942.

Reversed and remanded for further proceedings in accordance with this opinion.