## WABASH OIL & GAS ASS'N v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4194.

Circuit Court of Appeals, First Circuit.

April 3, 1947.

Writ of Certiorari Denied June 9, 1947.

See 67 S.Ct. 1533.

Edmund A. Whitman, of Boston, Mass., (Philip Nichols, of Boston, Mass., on the brief), for petitioner.

Carlton Fox, Sp. Asst. to the Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and Robert N. Anderson and Muriel S. Paul, Sp. Assts. to the Atty. Gen., on the brief), for Comissioner of Internal Revenue.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This petition for review of a decision of the Tax Court of the United States presents but a single question. It is whether during the calendar year 1941 the petitioning taxpayer, although an unincorporated association, was nevertheless taxable as a corporation under § 3797 of the Internal Revenue Code.[1]  26 U.S.C.A. Int.Rev.Code, § 3797.

---

1 "Definitions

"(a) When used in this title, where not· otherwise distinctly expressed or manifestly incompatible with the intent thereof—

The facts are fully set out in conjunction with the opinion of the Tax Court reported in 6 T.C. 542. We can state them more briefly here.

During the summer of 1940 one Carey, of Grayville, Illinois, and one Patton of Newton, Massachusetts, who had long been associated in the lumber milling business in Grayville, Patton being an inactive partner, solicited their friends and relatives for subscriptions (they raised approximately $19,000) to finance a venture in a newly discovered oil bearing area near Grayville. With the money so raised they obtained an oil and gas lease in the name of Patton as lessee on a tract of land in the area, and, neither having had any experience in the oil business, they employed an experienced oil operator to take over the property and drill a well on it. This well began to produce early in December 1940, and thereupon Carey purchased necessary supplies and equipment with money sent him by Patton and arranged for the sale of the entire oil production.

There was no written plan of organization prior to the time when the well was brought in. Soon thereafter, however, (December 23, 1940) "Articles of Agreement" were prepared and executed by all the subscribers.

In these Articles it is first set out that the subscribers, who are listed with the amounts of their subscriptions, had provided the consideration for the oil and gas lease taken in Patton's name and had also provided the funds required for developing the leased property, and then Patton acknowledged and agreed that he "is, and has been, the agent" of the subscribers "in negotiating and securing" the lease and "in the development thereunder"; that "he holds said lease as agent of, and for the benefit of" the subscribers and "will execute such assignments and agreements and do such

acts in connection with said lease and the developments thereunder as may be directed by two-thirds in interest of the subscribers hereto."

Following this the subscribers agree that Patton, Carey, and one Hall of Wellesley, Massachusetts, are to act "as agents and managers of the business of developing the property and marketing the oil, gas and other incidental products to be conducted under said lease under the trade name of the Wabash Oil and Gas Association", and furthermore that they shall continue so to serve until their successors are appointed as thereafter set forth, and shall receive such compensation for their services as they may unanimously agree upon. Next it is provided that Patton is to act as treasurer of the business, Carey as superintendent of its active operations, and Hall in an advisory capacity with final power to decide any difference of opinion which may arise between the other two. The subscribers then agree that "These three shall have full power to conduct the business with all the powers that we should have if personally present and active", including among other specifically enumerated powers, the power to borrow money and pledge or mortgage the "lease or other assets of the business as security therefor."

The Articles of Agreement continue with provisions requiring the agents and managers to keep open books of account and to make quarterly distribution of the net earnings of the business to the subscribers in proportion to their respective financial interests, subject, however, to the managers' power to reserve such portion of net earnings as may in their judgment be needed for working capital.

Provisions follow to the effect that should Patton die, resign, or for any reason become unable to act, he, or his personal representative, will assign the lease to any

"(1) Person.
"The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, company, or corporation.
"(2) Partnership and partner.
"The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization.
"(3) Corporation.
"The term 'corporation' includes associations, joint-stock companies, and insurance companies."

person named by the other two agents; that a majority in interest of the subscribers may remove and also replace any agent; that written approval of two-thirds in interest of the subscribers is required to authorize the agents to sell either the leasehold or the equipment purchased for use in the business; that in every contract order or obligation entered into by the agents on behalf of the Association it shall be stipulated that the other contracting party "shall look only to the leasehold and property used in said business for payment" and that neither the agents, the subscribers nor their successors shall be personally liable therefor;[2] and that any subscriber may sell his interest provided only that he first give the agents an opportunity to buy that interest for the benefit of the other subscribers. The Articles conclude with the provision:

"This agreement shall continue during the term of said lease and no one of the parties hereto shall be entitled to any dissolution or termination of this agreement, but on the death or bankruptcy of any one of them, the personal representatives or the trustee in bankruptcy, as the case may be, shall succeed to the interest."

During the year 1941 the Association had no office, held no meetings, made no distribution of net earnings, and, other than an unsigned copy of the Agreement, gave no certificate or evidence of ownership to any of the subscribers.

The petitioning association filed its income tax return for the year involved as a partnership.[3] The Commissioner, however, determined a deficiency on the ground that although an association it was "includible in the definition of a 'corporation' as prescribed by § 3797 (a) (3) of the Internal Revenue Code." On appeal the Tax Court, concluding "that petitioner more closely resembled a corporation than a partnership or joint venture", affirmed the Commissioner and the taxpayer thereupon brought this petition for review.

In § 3797 of the Internal Revenue Code Congress made its own classification of business organizations for the purpose of taxation. And in doing so it saw fit to put "associations" in the same category with "corporations" as technically defined in the law. This "including of associations with corporations", the Supreme Court said in Morrissey v. Commissioner, 296 U.S. 344, 357, 56 S.Ct. 289, 295, 80 L.Ed. 263, "implies resemblance; but it is resemblance and not identity." The question in this case, therefore, is whether the salient features of the organism created by the subscribers as the medium for carrying on their business venture, which they labeled Wabash Oil & Gas Association, make it analogous to a conventional corporation.

There seems to be some divergence of view among the circuits as to the nature of this question. In the Fifth Circuit it was held even before the decision in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, that the question was one of fact (Commissioner v. Horseshoe Lease Syndicate, 1940, 110 F.2d 748, certiorari denied 311 U.S. 666, 61 S.Ct. 24, 85 L. Ed. 427; Commissioner v. Rector & Davidson, 1940, 111 F.2d 332, certiorari denied 311 U.S. 672, 61 S.Ct. 33, 85 L.Ed. 432; Del Mar Addition v. Commissioner, 1940, 113 F.2d 410) but in the Sixth and Ninth Circuits it seems to have been assumed without discussion that the question was one of law. Commissioner v. Fortney Oil Co., 6 Cir., 1942, 125 F.2d 995; Helm & Smith Syndicate v. Commissioner, 9 Cir., 1943, 136 F.2d 440. See also Nashville Trust Co. v. Cotros, 6 Cir., 1941, 120 F. 2d 157. In the instant case, however, we see no necessity to consider this problem because the Association in every respect meets the test of resemblance to a corporate form of organization established in the Morrissey case, supra, and in the cases decided with it. Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering v. Combs, 296 U.S. 365, 56 S.Ct.

---

2 This provision was stricken from the Articles on December 31, 1941, all but four of the subscribers assenting thereto.

3 Its return was timely filed with the Collector of Internal Revenue for the Eighth District of Illinois. Review in this circuit is by stipulation in writing pursuant to the provisions of § 1141 (b) (2) of the Internal Revenue Code. 26 U.S.C.A. Int.Rev.Code, § 1141 (b) (2).

287, 80 L.Ed. 275; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278.

In the first place the subscribers associated together in a joint enterprise for the transaction of a business from which they hoped to realize profit, and in the second place the medium they chose for carrying on their enterprise substantially resembled a corporation in its organization. That is to say, the Articles of Agreement secured centralized management; title to the property embarked in the undertaking, as to the lease, in an individual with provision for his succession, and, as to the equipment, in a board of three "managers and agents" with provision for their succession; security from termination of the enterprise by reason of the death of any beneficial owner; facility of transfer of the beneficial interests without affecting the continuity of the enterprise, and limitation of the personal liability of the subscribers. See .7 A Mertens, Law of Federal Income Taxation (1943) § 43.14. The fact that no formal certificates of ownership were issued is unimportant. Nashville Trust Co. v. Cotros, supra, 120 F.2d at page 159; Commissioner v. Fortney Oil Co., supra, 125 F.2d at page 998.

Having all the essential characteristics of a corporation there is no room for any classification of the Association except as a corporation within the meaning of § 3797 of the Internal Revenue Code.

The decision of the Tax Court is affirmed.