OPINION. Arundell, Judge: Petitioners, during the years in question, held certificates of ownership in the two “anonymous companies,” Aurora and Anzoategui, which companies had title to certain royalty rights on various parcels of oil producing property in Venezuela. The royalties were paid by the concessionaires or exploiters to Aurora and Anzoategui which companies after setting aside sufficient sums to meet administrative expenses, taxes, and necessary reserves, either as required by Venezuelan law or otherwise, distributed the balance to the holders of the certificates of ownership. In determining the deficiencies in question, respondent has found that Aurora and Anzoategui are corporations or in any event legal entities separate and distinct from the petitioners as holders of certificates of ownership therein. It is respondent’s position that whatever rights to depletion or foreign tax credits may have existed were in those legal entities to the exclusion of the certificate holders and, further, that the certificate holders were taxable in each year on the amount actually distributed by the entities in that year. We think respondent’s position is well taken. As we understand the contentions of the petitioners, they are essentially based on the premise that the holders of the certificates of ownership, as distinguished from the anonymous companies, were the real beneficial owners of the royalty rights. Petitioners assert, therefore, that they should report as income in a given tax year their pro rata share of all income received by Aurora and Anzoategui in that year without regard to the amount distributed to them by those entities. They further contend that as the beneficial owners of the royalty rights they are entitled to deductions for depletion and credits for foreign taxes paid by the companies to the Venezuelan Government. Our study of the record convinces us beyond doubt that Aurora and Anzoategui were separate and distinct legal entities in the nature of corporations. The so-called document of constitution or charter as well as the bylaws of each company provided for centralized management in its officers and board of directors. Indeed, petitioners concede that one of the basic advantages in the existence of these companies was the centralization of the power of negotiation with the concessionaires. Another admitted advantage was the continuity of enterprise uninterrupted by the death or withdrawal of a certificate holder or director. Each of the companies was authorized to hold title to assets in its own right and did so. The liability of the certificate holders was limited. Each company had a seal. The records maintained by the companies were, or were comparable to, minute books of stockholders’ and directors’ meetings, journals, ledgers, inventory records, and stockholders’ books. The management rendered regular reports to the certificate holders, setting forth summaries of the activities of the companies and enclosing copies of current financial statements. The certificates of ownership were transferable. Obviously then, the companies in question possessed the salient features of corporate organization as set forth by the Supreme Court in the leading case of Morrissey v. Commissioner, 296 U. S. 344. See also Commissioner v. Nebo Oil Co., Trust, 126 F. 2d 148. Petitioners argued that even though the companies were corporate in form they should be treated for tax purposes as pure trusts, there being no business purpose or activity. In support of that argument they state that these companies were organized only for the purpose of conserving the royalty rights, negotiating with the concessionaires, collecting the profits, and distributing the proceeds. They urge that a pure trust was the ideal and normal way to accomplish their purposes. There being no concept of trusts in the Venezuelan law, however, petitioners contend that they were compelled to adopt the form of the compánia anónima as the only acceptable substitute, stating various reasons why a partnership or agency could not have been used. It may be that a trust would have afforded a convenient vehicle for the purposes of the petitioners, and there may have been certain disadvantages in the use of a partnership or agency, but we are by no means convinced that there was no alternative to the use of the compania anónima. We have no doubt that these Venezuelan companies were organized and operated for business purposes. They were organized under the Venezuelan Commercial Code; their charters gave them rights to operate in the business field and they were authorized to carry on the broadest business activities. Aurora not only bought royalty rights, but sold royalty rights and at one time made an investment in a totally unrelated field. Anzoategui from the record appears to have been somewhat less active, but its activities as disclosed in our findings were clearly of a business character. There is no warrant for disregarding these foreign entities and treating the distributions made by them from time to time to their shareholders as other than dividends. As stated by the Supreme Court in Moline Properties, Inc. v. Commissioner, 319 U. S. 436: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator’s personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. Respondent correctly determined that whatever rights to depletion deductions and foreign tax credits arose from the payment of royalties by the concessionaires were vested in those corporate entities to the exclusion of the certificate holders. The amounts distributed to petitioners-by Aurora and Anzoategui in each of the taxable years were in the nature of dividends and were, therefore, income to petitioners in those years. Decisions will be entered wider Bule 50.