HELVERING, COMMISSIONER OF INTERNAL REVENUE, v. COMBS ET AL., TRUSTEES.

No. 238. Argued November 22, 1935.—Decided December 16, 1935.

*Assistant Attorney General Morris,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Miss Helen R. Carloss* were on the brief, for petitioner.

*Mr. Dana Latham,* with whom *Mr. Melvin D. Wilson* was on the brief, for respondents.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The trustees of E. E. Combs Well No. 2 contested the ruling of the Commissioner of Internal Revenue that the taxpayer was taxable as an association, and not as a trust, on its income for the years 1925 and 1926. The Board of Tax Appeals sustained their contention and the Circuit Court of Appeals affirmed the order of the Board. 76 F. (2d) 682. A writ of certiorari was issued in view of the conflict of decisions to which we have referred in *Morrissey* v. *Commissioner, ante,* p. 344.

The trust was created " to finance and drill a well for production and sale of oil and other hydro-carbon substances under Oil and Gas Lease dated July 24, 1924." By the agreement, the Hub Oil Company, a California corporation and owner of the oil and gas lease, assigned to E. E. Combs and Edward Everett as Trustees all its rights under the lease, subject to a reservation of 6.5 percent of all oil, gas, and other hydro-carbon substances which might be produced and of a royalty interest in favor of one Smithson of 2 percent. The agreement described as beneficiaries "All persons who may own or acquire portions of the whole beneficial interest " as defined. The

assignor agreed to supply to the trustees certain equipment, and one Bailes had already agreed to furnish other equipment and materials and to superintend the operation of drilling the well in consideration of 12 percent of the production. The trust was to pay all labor claims and for materials not otherwise provided.

The "whole beneficial interest" in the trust was defined as .71333 percent of gross production, and the beneficiaries were to be paid their pro rata shares, after deduction for the payment of lawful trust obligations, as follows: (a) 25 percent of gross production to the beneficiaries who provided money for the trust purposes, (b) .44333 percent to E. E. Combs, and (c) 2 percent to Edward Everett. Certificates of beneficial interest were to be issued in approved legal form and were to be held in escrow until a producing well was brought in. Thirteen persons were named as beneficiaries, with the amounts contributed and the percentages owned by each, these amounts aggregating $25,000 and the percentage of ownership amounting to 25 percent. The "certificate of beneficial interest" recited that the party named was the holder of a beneficial interest under the trust agreement in the amount stated and that the same was transferable only upon the books of the trustees, upon endorsement and surrender of the certificate. The trustees were authorized to hold all property and property rights, the legal title to which might vest in them under the trust, to use the moneys deposited by beneficiaries to pay for labor, casing and other materials incident to drilling and production, to manage and protect the trust property, to pay "trust debts," to sell all products of the well, to borrow money upon the credit of the trust, and to sell any "unsold beneficial interests" as they might deem best for trust purposes. The trustees were not to be individually liable except for willful misconduct. E. E. Combs was to act as production manager at a stated salary after the

well was in production. All proceeds " of sale of well products " were to be paid into a designated bank to be distributed as agreed.

The provisions of the agreement were carried out. The thirteen described beneficiaries contributed the amount above stated. A well was drilled in 1925 and produced oil through the remainder of that year and for a portion of the year 1926. In the latter year the Trustees sold the lease. In both years they currently distributed to the beneficiaries the net proceeds from the sale of oil and from the sale of the lease and, after the latter sale and distribution of the moneys received, the trust was terminated.

The beneficiaries did not hold a meeting and the trust had no office or place of business, no seal, by-laws or official name, and the operations of the trustees were confined to the one lease they acquired.

In considering whether an association was created, the fact that the beneficiaries did not exercise control is not determinative. *Hecht* v. *Malley,* 265 U. S. 144; *Morrissey* v. *Commissioner, supra.* The parties joined in a common enterprise for the transaction of business, and the beneficiaries who contributed money for that purpose became associated in the enterprise according to the terms of the arrangement. The essential features of the enterprise were not affected by the fact that the parties confined their operations to one oil well. See *Swanson* v. *Commissioner, ante,* p. 362. Parties may form an association for a small business as well as for a large one. Here, through the medium of a trust the parties secured centralized management of their enterprise, and its continuity during the trust term without termination or interruption by death or changes in the ownership of interests, and with limited liability and transferable beneficial interests evidenced by certificates. Entering into a joint undertaking they avoided the characteristic re-

sponsibilities of partners and secured advantages analogous to those which pertain to corporate organization. The fact that meetings were not held or that particular forms of corporate procedure were absent is not controlling. *Morrissey* v. *Commissioner, supra.*

We think that the taxpayer was taxable as an association. The judgment is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*