THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, AS TRUSTEE UNDER TRUST AGREEMENT DATED JULY 1, 1931, BETWEEN AMERICAN DEPOSITOR CORPORATION, DEPOSITOR, AND THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, AS TRUSTEE, CREATING "CORPORATE TRUST SHARES, ACCUMULATIVE SERIES," PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, AS TRUSTEE UNDER TRUST AGREEMENT DATED JULY 1, 1931, BETWEEN AMERICAN DEPOSITOR CORPORATION, DEPOSITOR, AND THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, AS TRUSTEE, CREATING "CORPORATE TRUST SHARES, SERIES AA," PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, AS TRUSTEE UNDER TRUST AGREEMENT DATED JULY 1, 1931, BETWEEN AMERICAN DEPOSITOR CORPORATION, DEPOSITOR, AND THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, AS TRUSTEE, AS MODIFIED BY SUPPLEMENTAL AGREEMENT DATED SEPTEMBER 23, 1932, CREATING "CORPORATE TRUST SHARES, SERIES AA (MODIFIED)," PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 93857, 93855, 93856, 93854.  Promulgated February 20, 1940.

*Weston Vernon, Jr., Esq.*, for the petitioners.
*Walt Mandry, Esq.*, for the respondent.

438

OPINION.

STERNHAGEN : The Commissioner determined as to each of the four petitioners deficiencies in income and excess profits taxes for 1934. He now concedes the excess profits tax deficiencies to have been determined in error, and they are therefore no longer in issue. The income tax deficiencies result from the determination that petitioners are associations and therefore taxable as corporations, and the petitioners assail this determination. There is no other issue.

The petitioners are investment trusts within the general class commonly known as fixed trusts. They are administered under similar plans of operation, which the findings set forth in résumé, and the evidence shows no departure in their conduct from the provisions of the respective instruments. Securities constituting the investments of each are restricted to a prescribed portfolio, which neither the trustee nor the depositor may enlarge and which may be reduced only upon contingencies so minutely specified that only negligible discretion may be exercised by either in respect of the invested funds. Reinvestments are entirely forbidden. Under the agreement of 1931, "Corporate Trust Shares, Accumulative Series" (identical with the other three except in details hereafter mentioned), the trustee, holder of the legal title and certificates of the deposited shares and funds, is directed to collect all cash and other distributions, to convert the other distributions into cash, except those paid in common stock, and to distribute all such moneys proportionately to the trust share holders at semiannual intervals. The trustee may sell none of the shares constituting corpus except at the discretionary direction of the depositor, which may exercise this discretion only upon the occurrence of specified events tending to indicate that the shares are not a sound investment, or in case of the failure of any distribution by a constituent corporation for a year and 30 days, in which case a sale of its shares is mandatory. The proceeds of all such sales and also of liquidating distributions are distributable semiannually, as is income. Since no replacement shares may be purchased under any condition, the trust's stock portfolio might be permanently decreased, and if by such decreases the number of constituent corporations should fall below 16, the trust would terminate. The agreement of 1931 relating to series AA differs principally in that the trustee is also to sell common stock received as dividends and distribute the proceeds. Under the modified agreements, the depositor may direct the sale of any constituent shares which it regards as an unsound investment, and the exercise of its power to make such a direction is not conditioned upon the occurrence of specified events. Continuance of the trusts is not dependent on any minimum number of constituent corporations.

In general, under all of the agreements the trustee is to hold corpus and collect and distribute income and proceeds of trust property sold, and the depositor is to watch over and preserve the safety of investments by directing advisable sales. But it may not direct reinvestment. The trustee's functions, prescribed in detail, are purely ministerial, except in some cases of minor importance, such, for example, as a discretionary election in the course of a constituent corporation's reorganization. The depositor may direct sales to eliminate unsafe investments, and perform other acts, such as voting constituent shares, which are among the usual powers of the ordinary trustee.

The plan clearly provides no "medium for the conduct of a business and sharing its gains", and the trustee's operations under them can not properly be called "an enterprise for the transaction of business", which the Supreme Court in *Morrissey* v. *Commissioner*, 296 U. S. 344, regarded as implicit in the statutory term "association." The collection and distribution of income, the sales of securities and other acts of the trustee, and the acts of the depositor are but incidental to the holding and conservation of the corpus. These acts are different from such activities as the improvement, subdivision, and sale of real estate,[1] the operation of apartment houses and other buildings,[2] the development of oil lands,[3] and the conduct of a medical clinic,[4] which have been held to stamp the trusts performing them as associations. On the contrary, a trust which merely holds property and collects income is not to be classed as an association, *Myers* v. *Commissioner*, 89 Fed. (2d) 86 (C. C. A., 7th Cir.), even though, as here, the trustee acts in accordance with the directions of an agent or manager whose powers were:

definitely fixed in advance of their exercise. He possessed no authority beyond that expressly delegated by his principal. * * * The duties of the trustee were purely ministerial, with no power to control, direct, or participate in, the conduct of the selling enterprise contemplated by the contract. [*Lewis & Co.* v. *Commissioner*, 301 U. S. 385.]

In several cases investment trusts operating under plans similar to that of petitioners have been held associations, but in each instance

---

[1] *Kilgallon* v. *Commissioner*, 96 Fed. (2d) 337 (C. C. A., 7th Cir.); certiorari denied, 305 U. S. 622.

[2] *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369; *Swanson* v. *Commissioner*, 296 U. S. 362; *Title Insurance & Trust Co.* v. *Commissioner*, 100 Fed. (2d) 482 (C. C. A., 9th Cir.); *Solomon* v. *Commissioner*, 89 Fed. (2d) 569 (C. C. A., 5th Cir.); certiorari denied, 302 U. S. 692; *Williams Trust*, 39 B. T. A. 612 (on review C. C. A., 6th Cir.); *Cleveland Trust Co., Trustee*, 39 B. T. A. 429 (on review C. C. A., 6th Cir.); *Lee H. Marshall Heirs*, 39 B. T. A. 101 (on review C. C. A., 3d Cir., and C. A. D. C.).

[3] *Helvering* v. *Combs*, 296 U. S. 365; *United States* v. *Trust No. B. I. 35*, 107 Fed. (2d) 22 (C. C. A., 9th Cir., Oct. 25, 1939); *Thrash Lease Trust* v. *Commissioner*, 99 Fed. (2d) 925 (C. C. A., 9th Cir.); certiorari denied, 306 U. S. 654; *C. A. Everts et al., Jamison Lease Syndicate*, 38 B. T. A. 1039.

[4] *Pelton* v. *Commissioner*, 82 Fed. (2d) 473 (C. C. A., 7th Cir.). See also *Gibbs-Preyer Trust No. 1*, 39 B. T. A. 492 (on review C. C. A., 6th Cir.).

profits were sought from the sale and reinvestment of trust funds. The combined powers of the trustee and the depositor under petitioners' agreements fall short of any authority "to take advantage of wide swings in the market", as in *Investment Trust of Mutual Investment Co.*, 27 B. T. A. 1322; affd., 71 Fed. (2d) 1009 (C. C. A., 2d Cir.); to "invest and reinvest all sums of money deposited * * * making investments in its sole discretion", as in *Brooklyn Trust Co.* v. *Commissioner*, 80 Fed. (2d) 865 (C. C. A., 2d Cir.); certiorari denied, 298 U. S. 659; to conduct "an investment business for profit", as in *Ittleson* v. *Anderson*, 67 Fed. (2d) 323 (C. C. A., 2d Cir.), or to trade "on the market", as in *Fred T. Murphy et al., Trustees*, 25 B. T. A. 724.

We find upon the present record that the trustee and depositor or both combined were not given and did not in 1935 exercise any powers beyond those which are necessary incidents to the preservation of trust property, the collection of income therefrom, and its distribution to the holders of trust shares. Unlike the organization in *Morrissey* v. *Commissioner, supra*, petitioners' object was only "to hold and conserve particular property, with incidental powers, as in the traditional type of trusts." They were not "created and maintained as a medium for the carrying on of a business enterprise." It is unnecessary to decide whether they had other "salient features" resembling those of corporations which would otherwise invite the tax. The Commissioner erred in classifying the petitioners as associations, and his determination is reversed.

Reviewed by the Board.

> *Decision will be entered under Rule 50.*