Estate of Hermann Becker, Deceased, H. E. Becker, Theodor E. Becker and August Haenel, Trustees of Said Estate v. Commissioner.
Estate of Becker v. Commissioner
Docket No. 110598.
United States Tax Court
1943 Tax Ct. Memo LEXIS 229; 2 T.C.M. (CCH) 341; T.C.M. (RIA) 43311; June 28, 1943
*229 J. A. Rauhut, Esq., 824 Littlefield Bldg., Austin, Tex., for the petitioner. Stanley B. Anderson, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion Petitioner is a trust estate created by the will of Hermann Becker, H. E. Becker, Theodor E. Becker and August Haenel, all residents of Austin, Texas, are surviving trustees. Fiduciary income tax returns (for estates and trusts), Form 1041, were filed with the collector of internal revenue for the first district of Texas. The taxes in controversy are income and excess profits taxes for the calendar years 1937, 1938 and 1939, in the aggregate sum of $26,621.31, as follows: Excess
Year
Income Tax
Profits Tax
1937
$ 5,133.93
$ 5,843.64
1938
3,039.71
5,197.85
1939
2,976.26
4,429.92
$11,149.90
$15,471.41 Several adjustments resulting in part of the asserted income tax deficiencies have been conceded by petitioner and will be taken care of under Rule 50. It was stipulated at the hearing that by reason of petitioner's filing of capital stock tax returns and payment of the tax thereon under protest, there is no excess profits tax liability. The statutory notice of deficiency, dated January *230 19, 1942, holds that the Estate of Hermann Becker is an association taxable as a corporation and the major portion of the deficiency results from computation of the tax liability for the years involved in accordance with this holding. Findings of Fact Hermann Becker, died on October 22, 1933, and his will was probated in Travis County, Texas, on November 20, 1933. H. E. Becker, Theodor E. Becker, Paul A. Wilde and August Haenel were appointed independent executors and qualified on November 28, 1933. The last debt of the estate existing at testator's death was paid off on March 17, 1937. Pursuant to the will, the executors then automatically became trustees of the trust estate created under the will. Paul A. Wilde died in 1939. With minor omissions, the will of Hermann Becker is as follows: 1. It is my purpose in making this will to devise, bequeath and dispose of all of my separate property and all property constituting the community estate of my wife and myself, and to include in this disposition the interest of my wife in our marital community estate. The bequests herein made to and for the benefit of my wife are made upon condition that she accept them in lieu and satisfaction *231 of her marital community interest in any property owned by my wife and me. This disposition of our community property is made with the full and free concurrence of my wife, she and I having fully discussed and agreed upon it. 2. I give, devise and bequeath to my wife. Pauline Becker, our present home located at the Corner of San Jacinto and East Fourth Streets in the City of Austin, together with all the furniture and furnishings therein, she to have the right to use, occupy and enjoy and to dispose of the same as she sees fit. 3. I hereby give, will and bequeath to my said wife, Pauline Becker, the sum of Three Hundred ($300.00) Dollars per month during her life, which sum shall be paid to her out of this estate by my executors or trustees at the end of each month during her life. As I have stated above, this bequest to my wife is made in lieu of any marital community interest which my wife has or might otherwise claim in any of our community property. 4. All of the remainder of my estate I give. devise and bequeath in equal parts to my four (4) children, namely: Hermann E. Becker, Theodor E. Becker, Hermine Wilde (wife of Paul A. Wilde) and Bertha Haenel (wife of August Haenel), *232 and to their descendants, but I will and direct that they shall receive and take the title and possession thereof only at the time and upon the conditions hereinafter set forth. 5. I hereby designate and appoint my sons. Hermann E. Becker and Theodor E. Becker, and my sons-in-law, Paul A. Wilde and August Haenel, all of Travis County, Texas, or such of them as shall survive me, the sole executors of my last will and testament; and I will and direct that no bond or security shall be required of any of them as executor, and that letters testamentary shall be issued to them without any bond when this will is probated; and I further will and direct that no action shall be had in the County Court, or in any court of probate, in relation to the settlement of my estate, or with reference to this will, other than the probating and recording of this will and the return of an inventory, appraisement and list of claims of my estate. 6. I hereby give and grant to my said executors the power and authority to manage, control and dispose of all of the property of this estate (including herein, as above stated, any and all interest of my wife in our community property) and to sell, convey and exchange *233 same as and when all of my said executors shall think proper, but it is my will that neither the lumber business nor any of the real estate belonging to this estate shall be disposed of or conveyed except upon the unanimous consent of all of my executors then living, which consent shall be evidenced by their signatures to the deeds of other instruments of conveyances. 7. My said executors are authorized and directed to pay all debts owing by this estate at the time of my death, and their action in passing upon the validity of any claims against this estate shall be final and binding upon the beneficiaries of this estate. 8. After my executors have paid all debts owing by this estate at the time of my death they shall cease to be executors of this estate and shall immediately become trustees of this estate under this will and shall thenceforth act as such trustees under the provisions of this will hereinafter stated. As such trustees, they shall not be required to give any bond or security, and shall act free of control of any court. 9. My said trustees shall have, and I do hereby give, will, devise and bequeath to them, all of the property constituting this estate as hereinabove *234 described wheresoever said property may be situated. It is my will that said trustees shall keep, hold, manage, control and use said property, and shall have the power and right to sell and convey the same in the same manner that the full owner thereof might do, with the exception that none of said property shall be sold or conveyed except upon the consent and signature of all of the trustees to the instrument conveying same. 10. When in the judgment of those of my executors or trustees who are engaged in conducting and managing, or are employed in the lumber business owned by this estate, it shall be necessary to borrow money for and upon the credit of this estate, it is my will that they have and I do hereby give and grant unto them the power and authority to borrow upon the credit of this estate such sums of money as they may need, but it is my will that this power be used only when necessary and that the loans be made for no longer time than is necessary under the existing conditions. 11. My said trustees shall have and are hereby given the further power to collect all sums owing to this estate, to compromise all claims, to give receipts and releases, to sell, transfer and assign *235 notes and liens, to make contracts, and to invest and reinvest all funds belonging to or received for this estate. They shall exercise their judgment in determining the terms and conditions upon which property shall be acquired or sold and disposed of, and shall generally, upon unanimous consent of all of them, have the unqualified right to use, manage, control and dispose of all of the property constituting this estate in the same manner that the full owner thereof could use, control and dispose of same. 12. My said trustees are further authorized to improve any of said property, to construct and erect such houses and improvements as they may think proper, and to make such changes in said property as they shall think advisable. 13. It is my will and I do hereby direct that my said executors or trustees shall retain possession and control of all of this estate, whether same continue to be the identical property existing at the time of my death or the proceeds of the sale of such property or property acquired by purchase or exchange or the rents and revenues of this estate, using and managing the same in the manner hereinabove stipulated for a period of at least three (3) months *236 after the death of my wife. At the expiration of said three (3) months, my said four (4) children, or such of them as shall then be living and the descendants of any of my children that may have died, may if they so desire, require this estate to be partitioned and receive their full parts thereof in fee, or they may, if they so desire, continue said estate as an entire property under the management and control of the trustees herein named for such period of time as they may see fit. 14. It is my will, and I do hereby direct, that during the time my estate is held, managed and controlled by my said executors or said trustees my said son, Hermann E. Becker shall be the manager of the lumber business, and as such manager, shall have general supervision and control over the conduct and affairs of said business. 15. It is further by will, and I do hereby direct, that so long as my estate shall be held by my executors or trustees my said sons. Herman [Hermann] E. Becker and Theodor E. Becker, and my son-in-law, Paul A. Wilde, shall have the right to continue to work for and be employed by this estate in the same capacities in which they are employed at the time of my death, except that, *237 as above directed, by said son, Hermann E. Becker, shall be manager of the lumber business; and I will and direct that when by son. Theodor E. Becker becomes 25 years of age, he shall receive the same salary which is then paid to my son, Hermann E. Becker and my son-in-law, Paul A. Wilde, and shall thereafter receive the same salary which they receive. 16. It is my will and I do hereby direct that the salary to be paid to and received by my sons and son-in-law shall be left to the best judgment of my executors and trustees. 17. It is my will and I do hereby direct that my said executors and trustees shall have the right to pay to my devisees as dividends as much as one-fourth (1/4) of the net profits, rents and revenues form this estate during each year, but that not more than one-fourth (1/4) thereof shall be paid as dividends and that the remaining three-fourths (3/4) shall be kept and used by the executors or trustees as a part of this estate until its final partition. 18. I further will and direct that my executors or trustees shall at least once during each year make a full and accurate statement of the condition of this estate and give a true copy thereof to each person having *238 a beneficial interest in this estate. 19. It is my will and I do hereby direct that my said trustees may in the exercise of their discretion sell any portion or all of the property constituting my estate and may reinvest the proceeds from such property in other property or in such other business as they may decide upon, and that they may, in their discretion, retain the proceeds of such sale or sales, and loan, invest and reinvest the moneys so received, it being my will and desire to give to my said trustees the right and power to decide whether they shall continue to conduct my lumber business or sell or discontinue same, and to decide upon the sale or retention of any other property belonging to this estate, and to decide in what business this estate shall engage, and how its moneys shall be invested and its business conducted. 20. When this estate is partitioned such partition shall be made by my trustees and their action in partitioning it shall be binding and conclusive upon all of my devisees. Said partition shall allot to each of my four (4) children in severalty one-fourth (1/4) part in value of all of the property then constituting this estate; provided, however, that *239 if any of my said four (4) children have died prior to the time of such partition not survived by any child or children, then the portion of this estate which under the provisions of this will would have been allotted to such child or children then deceased shall be allotted in equal portions to my surviving child or children; and in the event any of my said four children shall have died prior to such partition leaving a child or children surviving him or her, then such surviving child or children of my deceased child shall be allotted jointly such interests as their deceased parent would have been entitled to if he or she had lived to the time of such partition. 21. It is my will and I do hereby direct that neither my said executors or trustees shall receive any fees, commissions or compensation for acting as executors or trustees. 22. It is further my will that if any of the persons named herein as executors or trustees dies or does not qualify, that the others herein named shall be and constitute the sole executors and trustees of this estate. All property of the estate was community property of testator and his wife Pauline Becker. On December 26, 1933, the widow duly elected *240 to accept under the will the gift thereby made to her of the home, furniture, furnishings, and $300 per month payable out of the estate for the remainder of her life, in lieu of her community interest. The payments of $300 per month have been made regularly. Pauline Becker was 76 years old at the time of the hearing. The testator's four children, namely H. E. Becker, Thedor E. Becker, Hermine Wilde (wife of Paul A. Wilde) and Bertha Haenel (wife of August Haenel), who are to share equally in the estate when distributed, were alive at the time of the hearing. At testator's death, all but Theodor were married and he married subsequently. There were eleven grandchildren at the time and five were born subsequently. The sixteen grandchildren, two of whom are married, were alive at the time of the hearing. Under the will distributions of estate income may not exceed 25 per cent thereof. During 1937, 1938 and 1939, the amounts of $10,859.72, $9,765.40, and $8,175.88, respectively, were distributed, the testator's four children each receiving, during the respective years, $2,714.93, $2,441.35, and $2,043.97. The undistributed income was required to be kept and used as a part of the estate *241 until its partition. The residual estate consisted of unimproved farm and ranch property, part of which was oil bearing, yielding royalties; unimproved land and lots in or near Austin, Texas, in part of which the community owned full title and in part an undivided interest acquired by testator through a partnership, Assman & Becker; improved residential and business property in Austin, held for rental purposes; a retail lumber business, the Becker Lumber Co., situated on improved lots owned by the marital community, which testator had operated as sole proprietor for about 20 years; accounts and notes receivable; and some stocks and bonds. The residual estate was taken over by the executors and has been managed and controlled by them as executors and trustees under the will. Substantially all of the property which comprised the original estate is still on hand. The executors-trustees have sold some of the unimproved real estate which was not yielding revenue and have improved other unimproved property owned by testator at his death, or subsequently purchased. They also sold some property which came into their hands in the course of liquidating debts owing to the testator, and some *242 property which testator had acquired before his death in the same manner, also some houses which the executors and trustees were forced to take back. Surplus funds derived from the lumber business and other sources have been used to purchase realty and to improve nonproductive realty. No improved, income-producing realty has been sold. The policy of the executors-trustees has been to retain income-producing real estate, to reduce the lumber business, to invest surplus funds in order to produce income therefrom, and to put the property of the estate in such form that it might be divided in kind when the time for partition arrived. The Assman-Becker partnership arose from the purchase by Herman Becker and one Assman of outlying land around Austin, Texas. One tract was laid out in lots before Becker's death. No attempt has been made to continue the partnership, as Assman's widow and the Becker estate desired to liquidate the holdings. The lots have been sold and the Becker estate's pro rata share turned over to it. The executors-trustees have continued to operate the Becker Lumber Co. along substantially the same lines as testator had done. They have not attempted to expand the business *243 and have added no new lines. Some money has been transferred out of the business for the improvement of nonproductive property. There are approximately 30 employees, consisting of sawmill operators, delivery drivers, office force, a collector, and an inside salesman. The executors-trustees would have disposed of the business if they could, but they have not had an opportunity for sale. A separate set of books has been kept for the lumber business, as testator did before his death. H. E. Becker, Theodor Becker and Paul A. Wilde, were employed by testator in his lumber business, receiving salaries. Wilde was manager. After testator's death, and until Wilde's death, these three continued to work in connection with the business, H. E. Becker having been substituted for Wilde as manager under the will. During the taxable years, the income derived from the lumber business decreased rapidly, whereas that from other sources shows a steady increase. Rents and royalties constitute a large part of the income of the estate. Some of the rent is collected by agents and some by the estate itself, depending upon who obtained the tenant. Some of the lands had been leased for oil and gas by testator *244 and the executors-trustees merely collected the royalties produced therefrom. No new royalties have been acquired and none have been sold. The beneficiaries, as such, have and exercise no voice in the management of the estate. There are no certificates or shares to evidence the beneficial interests, the will being the only evidence of interest therein. No beneficiary has attempted to transfer an interest in the estate. The estate has no office, by-laws, seal, or formal meetings of the trustees. There is an informal understanding among the beneficiaries that the estate will be partitioned in kind at the time permitted by the will, which is three months after the death of their mother. Opinion ARNOLD, Judge: The principal question in this proceeding is whether the Estate of Herman Becker is an association, taxable as a corporation as determined by respondent, or as a trust as claimed by petitioner. If an association taxable as a corporation then the issue is raised whether, in computing surtax on undistributed profits for 1937, it is entitled to a credit under section 26(c) of the Revenue Act of 1936, by reason of the fact that distributions of estate income are limited under the *245 will to 25 per cent thereof. Income of corporations and income of trusts are taxable at different rates. Section 2797(a)(3) of the Internal Revenue Code and the corresponding provisions of the Revenue Acts of 1938 and 1936, define the term "corporation" as including "associations." Section 19.3797-3 of Treasury Regulations 103, provides, as follows: Sec. 19.3797-3. Association distinguished from trust. - The term "trust," as used in the Internal Revenue Code, refers to an ordinary trust, namely, one created by will or by declaration of the trustees or the grantor, the trustees of which take title to the property for the purpose of protecting or conserving it as customarily required under the ordinary rules applied in chancery and probate courts. The beneficiaries of such a trust generally do no more than accept the benefits thereof and are not the voluntary planners or creators or the trust arrangement. Even though the beneficiaries do create such a trust, it is ordinarily done to conserve the trust property without undertaking any activity not strictly necessary to the attainment of that object. As distinguished from the ordinary trust described in the preceding paragraph there *246 is an arrangement whereby the legal title to the property is conveyed to trustees (or a trustee) who, under a declaration or agreement of trust, hold and manage the property with a view to income or profit for the benefit of beneficiaries. Such an arrangement is designed (whether expressly or otherwise) to afford a medium whereby an income or profit-seeking activity may be carried on through a substitute for an organization such as a voluntary association or a jointstock company or a corporation, thus obtaining the advantages of those forms of organization without their disadvantages. The nature and purpose of a cooperative undertaking will differentiate it from an ordinary trust. The purpose will not be considered narrower than that which is formally set forth in the instrument under which the activities of the trust are conducted. The regulation then discusses other characteristic features of associations particularly emphasizing the business purpose involved. This is summarized in the last sentence of section 19.3797-3, as follows: * * * The distinction is that between the activity or purpose for which an ordinary strict trust of the traditional type would be created, and the *247 activity or purpose for which a corporation for profit might have been formed. The corresponding articles of Regulations 101 and 94 contain similar language. The leading case in regard to trusts which may be classified as associations, taxable as corporations, is Morrissey v. Commissioner, 296 U.S. 344 (1935), which held, briefly, that the prerequisites of such classification are (1) associates, (2) business purpose, and (3) a combination of characteristics resulting in a closer resemblance to a corporation than to an ordinary trust. See also A. A. Lewis & Co. v. Commissioner, 301 U.S. 385 (1937); Swanson v. Commissioner, 296 U.S. 362 (1935); Helvering v. Combs, 296 U.S. 365 (1935); and Helvering v. Coleman-Gilbert Associates, 296 U.S. 369 (1935). The trust estate before us was created as part of a testamentary plan whereby the decedent, Herman Becker, provided by will for the conservation of his estate during the lifetime of his widow, in order that she might be supported therefrom, and for distribution of the estate among *248 his four children or their descendants, per stirpes, three months after the widow's death. The beneficiaries did not, "as mere cestuis que trustent, plan a common effort or enter into a combination for the conduct of a business enterprise." The object of the trust was "to hold and conserve particular property, with incidental powers, as in the traditional type of trusts," and not "to provide a medium for the conduct of a business and sharing its gains." Morrissey v. Commissioner, supra, at 357. The fact that testator's estate consisted in part of a going business, formerly operated by him as a sole proprietorship, which the executors and later the trustees continued to operate, does not supply the business purpose called for by the Morrissey case. The facts show that the continued operation of the business was entirely consistent with the duty of the fiduciaries to conserve the estate. There was a definite plan to reduce the business and to convert its proceeds into income-producing realty, so that the estate might be divided in kind when the time for partition arrived. The business would have been sold had an advantageous opportunity arisen. *249 The powers granted to the fiduciaries under the will, and the manner in which the estate operated, do not show any features which cause this trust to resemble a corporation and which distinguish it from an ordinary trust. The Morrissey case is clearly distinguishable on the facts, and in principle that case would require that petitioner herein be classed as an ordinary trust and not as an association. None of the cases relied on by respondent involve an ancestral or testamentary trust as here. We have not been cited to any other case which would require a contrary result. In view of the above, we hold that the Estate of Hermann Becker is an ordinary trust and not an association taxable as a corporation. As a result of this holding, it is not necessary to consider the issue raised in the alternative. Decision will be entered under Rule 50.