922

**MAIN STREET BANK et al. v. NEE, Collector of Internal Revenue.**

**LINWOOD SECURITIES COMPANY et al. v. SAME.**

Nos. 3440, 3470.

District Court, W. D. Missouri, W. D.
June 21, 1947.

John H. McEvers, Reece A. Gardner, and G. Lee Burns, all of Kansas City, Mo. (Stinson, Mag, Thomson, McEvers & Fizzell, of Kansas City, Mo., of counsel), for plaintiffs.

Sam M. Wear, U. S. Atty., and Sam O. Hargus and Earl A. Grimes, Asst. U. S. Attys., all of Kansas City, Mo., Sewall Key, Acting Asst. Atty. Gen., and Andrew D. Sharpe and John W. Fisher, Sp. Assts. to Atty. Gen., for defendant.

REEVES, District Judge.

The same questions are involved in both of the above cases. The two actions have been brought to recover specified sums paid as income taxes and declared value excess-profits taxes for certain years.

Under trust arrangements designated trustees took over the management of properties in which the several plaintiffs were interested and by such management and operation considerable profits accrued to the plaintiffs. The Commissioner of Internal Revenue determined that the management and operation was in the nature as if by an association and that the kinship was sufficiently close to a corporation to be classed as such and therefore to justify the imposition of an income tax. To avoid distraint, the tax was paid and now the plaintiffs sue for recovery.

No issue is raised on the question of the declared value excess-profits taxes for the years named, as the government admits that this tax should be refunded to the taxpayers. It has not been done, however, and judgment is prayed here for such tax.

It is contended by the plaintiff that the trustees received no taxable income during the years covered by the action for the reason that they were not invested with title to the property within the purview of the taxing law, and, moreover, they say that the trusteeship was such that it was not taxable as in the case of associations and corporations.

On the contrary, it is the contention of the defendant that the trustees held title

in such way as to make them liable for the tax and that their operations and management of the trust warrant the imposition of the tax as in the case of associations and corporations.

In the year 1922 two separate and distinct cattle ranches, located in the States of Texas and New Mexico, executed mortgages on their properties to secure notes given by them. These notes were negotiated in Kansas City and ultimately became the property of the plaintiffs. There was a default on all the notes, whereupon the banks for their mutual protection, by declarations of trust, or agreements in writing, designated trustees to undertake the collection of the debts due from the ranch owners. This involved the foreclosure of the mortgages on properties conveyed as security: One was known as the Nymeyer properties, and the other was known as the Culp properties.

In the former, the declaration of trust clothed the trustee as follows, with:

"* * * full power and authority to hold, manage, lease and handle said property or any part thereof, including the right to execute leases for oil, gas and mineral rights or for grazing purposes on said property or any part thereof, and to transact any and all business incident thereto, including the right to collect income therefrom and disburse the same."

On the Culp property, the power conferred upon the trustees was as follows:

"* * * full power and control of the management and disposition of the properties herein referred to, including the right to execute on behalf of the beneficiaries, oil, gas or mineral leases and the transaction of any business incident thereto and to execute and deliver oil and gas leases and leases for grazing purposes. If differences arise among the trustees as to the disposition and sale or management and control of said properties, both real and personal, then the vote of the majority of the trustees shall control the procedure and action of such trustees in the management and disposition of said properties. The trustees herein are granted the power to execute all contracts and deeds of conveyance for the sale, disposition and conveyance thereof."

The notes held by the plaintiffs amounted to a considerable sum and the original objective was merely marshalling of assets and the liquidation of said notes. The development of mineral, oil, and gas on the properties, however, enabled the trustees not only to liquidate said notes but to return a large profit to the plaintiffs. The plaintiffs, in their corporate capacity, could not operate oil leases or engage in that kind of business. They did not form an independent corporation for the purpose but permitted the properties to be managed under the trust arrangement above described. In view of the large profits or returns made to the plaintiffs the Collector, obedient to a determination by the Commissioner of Internal Revenue, levied an assessment upon such income and elected to treat the trustees as an association operating within the Revenue Law and imposing the duty to pay an income tax.

As indicated, the plaintiffs insist that the trustees are not vested with title so as to bring them within the purview of the statute, and, that, even so, they did not constitute an association taxable under the revenue laws.

These will be considered.

1. In the first place there is no dispute but that the trusteeships created by the plaintiffs resulted in large returns to the plaintiffs after the liquidation of the indebtedness originally prompting the arrangements. In the beginning, the trustees acted as mere agents for the plaintiffs, to collect and marshal the assets covered by mortgage and to convert it into cash so as to liquidate the indebtedness. Because of the oil developments the duties of the trustees were enlarged, and, instead of remaining mere liquidating agents or trustees, they became the managers of an exceedingly profitable business. The properties yielded large returns. The fact that the title to the properties was not put technically in the names of the trustees is unimportant. For all practical purposes they controlled the ownership and were possessed of such agency power as to make sales contracts binding upon the plaintiffs. As well stated in the case of Helvering v. Horst, 311 U.S. 112, loc. cit. 115, 61 S.Ct. 144, 146, 85 L.Ed. 75, 131 A.L.R. 655:

"*From the beginning the revenue laws have been interpreted as defining 'realization' of income as the taxable event rather than the acquisition of the right to receive it. And 'realization' is not deemed to occur until the income is paid.*"

In this case the trustees received the income. There was in very truth a " 'realization' of income" and, as indicated, the government was concerned with the income "rather than the acquisition of the right to receive it."

However, no one has raised the question of the right of the trustees to receive the income. On the contrary, the right to receive the income is freely acknowledged, and the plaintiffs, as beneficiaries, had distributed to them such income by the trustees. It is of little consequence how active or inactive the trustees were, the fact remains that they, acting as a collective body on behalf of the plaintiffs, received large incomes and distributed same to these plaintiffs as beneficiaries. The government's tax could not be defeated by the mere suggestion that the trustees did not hold with exactitude the legal title to the properties operated by them and over which they were authorized to exercise all the rights of complete ownership.

In view of this, the contention of the plaintiffs as to the title of the trustees, should not be sustained.

2. The next question is whether the operation of the business by the several sets of trustees brought the trustees within the definition of associations mentioned in the statute.

In the first place the classification of objects of taxation is within the particular power and authority of the taxing authorities for the government. Necessarily the government fixes its own standards of classification and local law is of no importance and has no force and effect in this connection. This is made so by an express regulation. By such regulation it is provided that:

"The term 'association' is not used in the Internal Revenue Code in any narrow or technical sense. It includes any organization, created for the transaction of designated affairs, or the attainment of some object, which, like a corporation, continues notwithstanding that its members or participants change, and the affairs of which, like corporate affairs, are conducted by a single individual, a committee, a board, or some other group, acting in a representative capacity. It is immaterial whether such organization is created by an agreement, a declaration of trust, a statute, or otherwise. * * *."

In the several cases cited by the parties in 296 U.S., and 56 S.Ct., the taxes imposed in such cases were upheld both on principle and authority. An important case by analogy is that of Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275, where it was held that a common enterprise under a trust instrument for acquisition of an oil lease, drilling and operation of an oil well, sale of products, sale of the well, and distribution of income among the beneficiaries was taxable on the income as an "association" under the Revenue Act. This opinion followed the case of Morrissey v. Commissioner, 296 U.S. 344, loc. cit. 357, 56 S.Ct. 289, 295, 80 L.Ed. 263, where Chief Justice Hughes said:

"In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, *but to provide a medium for the conduct of a business and sharing its gains. Thus a trust may be created as a convenient method by which persons become associated for dealings in real estate, the development of tracts of land, the construction of improvements, and the purchase, management, and sale of properties; or for dealings in securities or other personal property; or for the production, or manufacture, and sale of commodities; or for commerce, or other sorts of business; where those who became beneficially interested, either by joining in the plan at the outset, or by later participation according to the terms of the arrangement, seek to share the advantages of a union of their interests in the common enterprise.*"

"The government contends that such an organized community of effort for the doing of business presents the essential features of an association."

The cases presented are very similar to that of Helvering v. Coleman-Gilbert, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278. In that case there was informality in the management of the trust. The court said (296 U.S. loc cit. 373, 56 S.Ct. 287):

"There had been no meetings, no records, and the acts of the trustees were not determined by a majority vote. The trustees had conducted the business in the same manner as it had been conducted before the trust was formed. *We think that the court unduly emphasized the mere differences of formal procedure. If such differences were to be made the test in determining whether or not an enterprise for the transaction of business constitutes an association, the subject would be enveloped in a cloud of uncertainty, and enterprises of the same essential character would be placed in different categories simply by reason of formal variations in mere procedural details."*

The principles discussed were rather elaborately covered in the case of Sherman v. Commissioner, 6 Cir., 146 F.2d 219.

■ 3. In view of the contentions made, it is well to refer to Amendment XVI to the Constitution of the United States, being the Income Tax Amendment. It is as follows:

"The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

The Congressional Act, being Section 11, Title 26 U.S.C.A. Int.Rev.Code, relating to individuals is as follows:

"There shall be levied, collected, and paid for each taxable year upon the net income of every individual a normal tax determined by computing a tentative normal tax of 3 per centum of the amount of the net income in excess of the credits against net income provided in section 25, and by reducing such tentative normal tax by 5 per centum thereof."

And, by Section 13 of said Title, it is provided:

"(b) * * * There shall be levied, collected, and paid for each taxable year upon the normal-tax net income of every corporation, etc. * * * of which * * * etc."

Neither the Constitution nor the statute makes the holding of legal title of the property a prerequisite to the imposition of the tax.

In view of the above, the plaintiffs are not entitled to recover save only as to the declared value-excess profits taxes paid by the plaintiffs. They should have judgment for the amounts so paid with interest from the date of the demand for repayment. Counsel for plaintiffs will prepare and submit proper judgment entries.