OPINION. Johnson, Judge: Petitioner assails the Commissioner’s determination that it is subject to income tax as a corporation, contending, first, that in organization and operation it lacks the resemblance to a corporation contemplated by section 3797 (a) (3), Internal Eevenue Code, and, second, that it is expressly exempt from tax by section 101 (7). Respondent defends his determination, arguing that petitioner’s activities bore the requisite resemblance to a corporate enterprise and that they do not qualify petitioner as a business league under the exempting provisions of section 101. Concededly, petitioner was not incorporated. But section 3797 (a) (3) expands the meaning of corporation to include an association, and, by section 29.3797-2 of Regulations 111, the Commissioner has defined association as: * * * any organization, created for the transaction of designated affairs, or the attainment of some object, which like a corporation, continues notwithstanding that its members or participants change, and the affairs of which, like corporate affairs, are conducted by a single individual, a committee, a board, or some other group, acting in a representative capacity. In Morrissey v. Commissioner, 296 U. S. 344, the Supreme Court approved and expounded this definition. After saying that “The inclusion of associations with corporations implies resemblance; but it is resemblance and not identity, * * *” the Court proceeded to list five salient features of a corporate body which might serve as convenient tests of resemblance. Those features are the corporation’s title to property embarked in a common undertaking; centralized business management through directors or other representatives; continuity regardless of changes in the group of interest holders; facility for the transfer of an interest; and the limitation of a participant’s personal liability to property embarked in the enterprise. But those tests are not rigid and, if some are met while others are not, the association’s classification should be that type of entity to which it “is predominantly akin in the method, mode, and form of procedure in the conduct of its business.” Commissioner v. Brouillard (C. C. A., 10th Cir.), 70 Fed. (2d) 154. A review of petitioner’s organization and activities discloses, in our opinion, only minor and incidental resemblances to corporate structure and operation. Its objects, as recited in the constitution, are the promotion of its members’ business interests as a whole by enforcement of ethical standards, the encouragement of efficiency, attention to legislation affecting insurance, and the public dissemination of information on insurance, fire prevention, and safety. The evidence establishes that petitioner engaged in activities to achieve these ends, and, as respondent stresses, it was also instrumental in acquiring from government agencies orders for insurance policies which its members issued and on which it collected the premiums, retaining and using so much of these as was required for its expenses not covered by receipts from other sources. It distributed the remainder among members. In the conduct of its operations petitioner had no property or funds which can properly be described as working capital. In practice, the secretary-treasurer refrained from exhausting the bank account by distributions, keeping on hand some margin to meet expenses, and the balance sheets also showed some accounts receivable, the total assets varying between $1,047.09 in 1937 and $4,535.78 in 1941. It Used current receipts to meet current expenses. The expenses were incurred principally for the objects recited in its constitution, which does not expressly refer to the placing of policies with governmental agencies, and were largely covered by members’ dues. There was nothing having the character of an investment such as the apartment houses considered in Helvering v. Coleman-Gilbert Associates, 296 U. S. 369, or the oil leases in Helvering v. Combs, 296 U. S. 365. And, since petitioner never risked, used, or held any assets for the production of income, it had nothing which corresponds to a corporation’s “property embarked in a common undertaking.” While the management of its affairs was carried out through officers and committees, their acts were' subject to the entire membership’s approval and would appear to be ministerial in the sense that they carried out instructions or resolutions, in contrast with the managerial functions of corporate officers and directors empowered to make business and policy decisions. In respect of the placing of governmental insurance policies, the activity on which respondent relies in support of his determination, it is to be noted that petitioner itself was not bound as principal, but only the members who accepted the policy orders for writing. The trial of members for forbidden malpractices was a judicial function, having no resemblance to any corporate activity. Petitioner, like a corporation, enjoyed continuity of existence, and, while issuance of “a certificate of membership” was authorized by the constitution, in fact none was ever issued. The transfer and sale of a membership were also authorized, but this superficial resemblance to a corporate share vanishes in the light of concomitant requirements that the transferee qualify as eligible for membership, obtain the consent of the executive committee for the transfer, and be “elected” a member. Thus, there was constitutionally no right of transfer. In practice, there were neither certificates nor transfers. New members were admitted only by vote of the membership, a procedure wholly at variance with the normal method of transferring a corporate share. Participation was thus more in the nature of a personal right than a property right. There was, furthermore, no limitation on a member’s liability in respect of the profit-producing business, for it was not in fact petitioner’s business at all, but that of its members. The insurance commissions were earned by the issuance of policies which the member sold individually; petitioner itself was not even licensed to issue a policy. Respondent argues that petitioner advertised and that its insurance committee solicited the public business, procured it, delivered the policies, and collected the premiums, retaining the commissions. These statements are correct, but incomplete. The committee acted, and was understood by all concerned to be acting, not for petitioner, which had no policies to sell, but as a common agent for its members, who did have policies to sell. This role is not that of a corporation, for a corporation deals with customers as principal. Accordingly, we find and hold under the particular facts of this case that petitioner did not bear sufficient resemblance to a corporation to warrant the taxing of it as such. In organization and operation, petitioner falls rather within the expanded definition of a partnership, section 3797 (a) (2), Internal Revenue Code, not subject to tax as an entity, and the Commissioner’s determinations of deficiencies and penalties are accordingly reversed. This disposition make it unnecessary to pass upon the alternative contention that petitioner was tax exempt as a business league or upon the other issues raised. Reviewed by the Court. Decision will he entered for the petitioner. Hill, J., dissents.