OPINION. Arundell, Judge. The sole issue in this case is whether the petitioner, nominally a partnership, is taxable as an “association” within the purview of section 3797 (a) (3) of the Internal Revenue Code[1] and section 27.3797-2 of Regulations 111.[2] Where, as here, the business entity resembles a corporation in some respects and a partnership in others, the real test is whether it more nearly resembles a corporation than a partnership in its general form and manner of operation. Bert v. Helvering, 92 Fed. (2d) 491. In determining this question in the past the courts have consistently looked to the standards established by the Supreme Court in Morrissey v. Commissioner, 296 U. S. 344. There the Court, holding that the Commissioner had properly taxed an express trust as an “association,” based its conclusion principally upon certain corporate characteristics which it found to be present in that case, namely, centralized control and management, limited liability, transferability of interests, title to property held in the name of the business entity, continuity of enterprise, and sustained operation of the business for profit. Cf. Bloomfield Ranch v. Commissioner, 167 Fed. (2d) 586; Commissioner v. Fortney Oil Co., 125 Fed. (2d) 995. The petitioner was organized in 1938 as a limited partnership association under sections 8059 to 8078, inclusive, of the Ohio General Code, which authorize and prescribe the procedure for the formation and operation of such a partnership association, and provide for the election of managers and officers, the limited liability of partners, the transferability of interests, the manner in which it may hold title to property and bring suits, and the means by which it shall keep the public and its creditors informed of its current liabilities and the capital subscription of each member. The original partnership agreement was executed in strict conformance with the aforementioned provisions of the Ohio General Code, and the evidence demonstrates that in conducting the business in subsequent years the partnership substantially adhered to the statutory requirements. Under the partnership agreement, the petitioner’s members enjoyed the privilege of transferability of interests, subject only to the obligation that a member desiring to sell must initially offer his interest to the association at a price fixed by a board of arbitration. Should the association refuse to purchase an interest once it was offered, the holder was thereafter free to sell to whomever he chose. The transferability feature of the partnership agreement and the provisions of Ohio law under which the petitioner was organized insured continuity of the enterprise, uninterrupted by any transfer of a member’s interest, whether by sale, death, or bankruptcy. Secs. 8066 and 8067, Ohio General Code. Moreover, the petitioner’s members exercised this right on at least three occasions, executing and recording transfers of interests in accordance with the pertinent statutory provisions. Sec. 8066, Ohio General Code. On January 6,1941, an agreement was executed reflecting the assignment of the interest of each member to the association and a redistribution of interests among the members, including Milton and Marie, who each received for the first time a 5 per cent interest in the business. In 1943 Milton and Jacob transferred their interests to Julius when it was feared that the interest of each might fall into the hands of an outsider. During the taxable years in question title to the real properties used in the petitioner’s business was held in the name of “Giant Auto Parts, Limited.” United States bonds were also purchased in the name of the petitioner. The petitioner brought and defended suits in its own name. See sec. 8077, Ohio General Code. The Ohio statute under which the petitioner was organized provided that the personal liability of the petitioner’s members was limited to the amount of their respective subscriptions of capital. Sec. 8(363, Ohio General Code. It is true that in certain circumstances the failure to comply with the requirements of Ohio law in respect to the keeping of a register of debts and liabilities and subscription list book and the use of the word “limited” in the partnership name could have subjected the members to liability beyond that set forth in the statute. Secs. 8060, 8063, and 8064, Ohio General Code. The mere possibility that such a contention might have been raised at some time by a creditor does not justify the conclusion that petitioner’s members did not in fact enjoy limited liability in respect to partnership debts. It appears, that the petitioner maintained on its regular books an accurate and complete account of all its debts and liabilities, and a separate capital account in the name of each member. We have found no support for the petitioner’s argument that these accounts were not in conformance with the requirements of sections 8060 and 8064, swpra. Moreover, sections 8061 and 8064, which deal with the effect of a failure to maintain a register of debts and liabilities and the omission of the word “limited” from the partnership name, clearly suspend the immunity granted by section 8063 only where it can be shown by the creditor that the partnership’s failure or neglect was responsible for his loss. In our opinion, the liability of petitioner’s members for its debts and liabilities bore more of a resemblance to the liability of members of a corporate enterprise than that of ordinary partners. Cf. Helm & Smith Syndicate v. Commissioner, 136 Fed. (2d) 440. Petitioner’s principal argument is that its business was not conducted under a centralized control or management such as characterizes a corporate enterprise. Petitioner cites as evidence in support of its contention that it was a close family partnership and the fact that its members purchased used or wrecked automobiles, sold merchandise, and hired and fired employees without obtaining in each instance express consent or specific authority from a board of managers, directors, or officers. In our opinion, the record falls far short of establishing the petitioner’s contention. The original partnership agreement recites that petitioner’s members in 1938 elected Jacob, Julius, Seymore, and Irvin as managers, and Julius as chairman, Jacob as treasurer, and Seymore as secretary. There is evidence that during the taxable years in question the petitioner, in its business correspondence and advertising, made similar representations of having partnership officers. Moreover, the activities petitioner has shown to have been regularly performed by its members appear to have been in the nature of routine duties which are commonly delegated by a business to responsible employees. On the other hand, the record does not disclose in whom the responsibility was vested for determining matters of over-all business policy, such as the expansion of the business to include the sale of new auto supplies or the establishment of branch outlets. There is no evidence that decisions of major importance in the business were made by the individual partners solely on their own initiative. It is true that the ownership of the business was confined to a few members of an intimate family group, that no regular or formal meetings were held, that no minutes were kept, and that no election of officers was held after the original execution of the partnership agreement. The petitioner’s failure to observe the formalities in respect to meetings and elections and the fact it was owned by a small number of persons have no bearing upon its classification as a corporation or partnership. Morrissey v. Commissioner, supra; Helvering v. Combs, 296 U. S. 365; Helvering v. Coleman-Gilbert Associates, 296 U. S. 369. It is not uncommon to find corporations with a single stockholder or a small number of stockholders, all of whom are members of the same family. The fact that petitioner’s members included no one outside of the Frost family may well account for the petitioner’s failure in the present case to observe strictly the formalities of the statute under which it was organized. We also think that it is significant that the business prior to 1938 and after 1948 was conducted as a corporation. The members state that the sole reason for the dissolution of the original corporation and the formation of the petitioner in 1938 as a partnership association was to avoid the payment of social security and other benefits in respect to their own salaries. They also emphasize that after the organization of the petitioner the business continued to be operated in the same manner as it had been under the prior corporation. These facts constitute further evidence that the parties in forming the petitioner did not intend to completely forego the advantages of doing business under a corporate form in favor of an ordinary partnership. It is unnecessary in the instant case to decide whether all partnership associations created under sections 8059-8078, inclusive, of the Ohio General Code constitute associations taxable as corporations under section 3797 (a) (3). Cf. Regulations 111, sec. 29.3797-6; O. D. 444, C. B. June 1920, p. 11. “The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted.” Helvering v. Coleman-Gilbert Associates, supra. While it is not controlling for Federal tax purposes how such a partnership may be classified under state law (Burk-Waggoner Oil Assn. v. Hopkins, 269 U. S. 110; Pelton v. Commissioner, 82 Fed. (2d) 473), it is interesting to note that a partnership organized under the same section of the Ohio General Code has been held to have the attributes of a corporation rather than those of an ordinary partnership. R. F. Roof, Ltd. v. Sommers, 75 Oh. App. 511; 62 N. E. (2d) 647. It is our judgment, after careful consideration of all the evidence, that the petitioner’s organization and manner of operation were more closely akin to that of a corporation than a partnership. The respondent correctly determined that petitioner constituted an association taxable as a corporation. Decision will be entered wider Rule 50. SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly 'incompatible with the intent thereof— ******* (3) Corporation. — The term “corporation” includes associations, joint-stock companies, and insurance companies. Sec. 29.3797-2. Association. — The term “association” is not used in the Internal Revenue Code in any narrow or technical sense. It includes any organization, created for the transaction of designated affairs, or the attainment of some object which, like a' corporation, continues notwithstanding that its members or participants change,-and the affairs of which, like corporate affairs, are conducted by a single individual, a committee, a board, or some other group, acting in a representative capacity. It is immaterial whether such organization is created by an agreement, a declaration of trust, a statute, or otherwise. It includes a voluntary association, a joint-stock association or company, a “business” trust, a “Massachusetts” trust, a “common law” trust, an “investment” trust (whether of the fixed or the management type), an interinsurance exchange operating through an attorney in fact, a partnership association, and any other type of organization (by whatever name known) which is not, within the meaning of the Code, a trust or an estate, or a partnership.