OPINION. Johnson, Judge: Bejecting the partnership return filed for 1944, the Commissioner determined petitioner to be taxable as a corporation under section 3797, Internal Bevenue Code, and computed tax deficiencies at corporate rates. Contesting this determination, petitioner denies resemblance to a corporation. Technically, of course, it was not one, being unincorporated, and the facts found also indicate that it lacked the essential characteristics of a partnership. But for tax purposes the meaning of each term is expanded by section 3797: (2) Partnership and Partner. — The term “partnership” includes a syndicate, group, pool, joint venture or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term “partner” includes a member in such a syndicate group, pool, joint venture, or organization. (3) Corporation. — The term “corporation” includes associations, joint-stock companies, and insurance companies. By sections 29.3797-2 and 29.3797-4 of Regulations 111 the Commissioner has defined an association subject to tax as a corporation as any organization which continues notwithstanding changes in its participants and has a representative individual or board to conduct its affairs. In approving these characteristics as proper tests of corporate resemblance, the Supreme Court, in Morrissey v. Commissioner, 296 U. S. 344, also stressed as significant the title to property embarked in a common undertaking, facility for the transfer of a participating interest in the enterprise, and the limitation of a participant’s personal liability to the property invested by him. But the requisite resemblance is not rigidly measured by one or more specific tests. The various features of ownership and administration must be considered as a whole for arriving at the proper classification of the entity. Commissioner v. Brouillard (C. C. A., 10th Cir.), 70 Fed. (2d) 154. So viewing petitioner’s characteristics, we are unable to agree with respondent’s contention that the enterprise was constituted and operated in the manner of a corporation. Respondent argues technically that Gordon’s associates could not be partners because all members of a manager-partnership were required to be signatories of the basic agreement and the associates were not signatories; that between the associates there was no mutuality to support either a partnership or a joint venture; that Gordon himself referred to them as stockholders; and that, like stockholders, they had no managerial control. He stresses that Gordon solicited contributions which resembled stock subscriptions in that the subscriber acquired a fixed interest in the enterprise; that the associates vested in Gordon managerial powers normally inherent in a board of directors; that there was no restriction on the transfer of participating interests; that an associate’s death would not interrupt continuity; and that his personal liability was limited. Petitioner began as Gordon’s individual enterprise. He personally assumed liability for all debts contracted, performed all functions of management, and acquired the production rights in the play, petitioner’s major asset, and also other properties. He might have transferred these assets and obligations to a corporation in exchange for shares issued to him and others. But in fact he remained throughout the title holder of the assets and personally responsible for all liabilities aris- ' ing out of contract or tort which the enterprise might incur. Although in his letters to the associates he stated that each had acquired a percentage of interest in the play, it seems plain that he was never divested of title to the production rights, for by his contract with the authors these rights were expressly nontransferable and nonassign-ahle and, moreover, a reading of the entire letter indicates that the associate was entitled to receive only a specified percentage of profit in case there should be a profit, not an interest in assets. The contract embodied in the letter must be interpreted according to its effect rather than its language, for terms used in it are legally incompatible. Thus the cash advance for production costs is referred to as a loan in the fifth paragraph, but as an investment in the seventh. ■ Intent, however, is clear. The associate paid in a specified amount of money, which was to be repaid out of the first profits or forgiven if there should be no profits, and he acquired a right to a specified percentage of profits thereafter, or, if there should be no profits, he agreed to reimburse Gordon for a like percentage of losses. Significantly, there is no relation between the percentage of participation and the amount of the cash advance. Cohen, who advanced $1,000; Ada Thorn, who advanced $300; and M. G. Plays Venture, which advanced nothing, each acquired a 2 per cent participation. After first receiving back the cash advance, each associate thereafter was to "be paid his specified percentage of profits. But if there had been losses, he would have been required to pay his specified percentage thereof without limitation as to amount. And this obligation would have arisen from his individual contract with Gordon, not from any understanding with the other associates or with petitioner’s creditors. Under such an arrangement the characteristic incidents of corporate. organization are missing. The associates did not buy stock with their advances; they made loans, contingently payable out of petitioner’s first profits if any. They acquired a right to a percentage of profits by guaranteeing to reimburse Gordon for a like percentage of losses. This was no limited liability, as respondent suggests. If the play had been unsuccessful, they would have lost not only the advance, the only property risked by them in the enterprise, but their guaranteed part of petitioner’s losses, for which the contract fixed no bounds at all. Cf. Commissioner v. Rector & Davidson (C. C. A., 5th Cir.), 111 Fed. (2d) 332; Commissioner v. Horseshoe Lease Syndicate (C. C. A. 5th Cir.), 110 Fed. (2d) 748; Pierre S. du Pont, 37 B. T. A. 1198, 1282; affd. (C. C. A., 3d Cir.), 118 Fed. (2d) 544; certiorari denied, 314 U. S. 623. Petitioner had nothing corresponding to capital in a corporate sense such as the apartment houses considered in Helvering v. Coleman-Gilbert Associates, 296 U. S. 369, or the oil leases in Helvering v. Combs, 296 U. S. 365. As the production rights to the play were the nonassignable personal property of Gordon, they would have terminated upon his withdrawal or death, and the other properties used in the enterprise would thereupon have become of negligible value. While there was apparently no impediment to an associate’s transfer of his contract, Gordon himself. could not have transferred all his interest in the venture without terminating the whole enterprise. Because of his relation to it and the production rights on which its continuity depended, furthermore, his managerial position was not like that of a corporate officer or board of directors, acting in a representative capacity for stockholders. The associates were in no position to grant or to deny him managerial control. That control was indefeasibly vested in him by his contract with the authors of the play, and he could not relinquish it without exposing production rights to forfeiture. Respondent points out that in 1945 the “Minimum Basic Agreement” was held invalid because in restraint of trade, Ring v. Spina, 148 Fed. (2d) 647; he also cites Dunkel v. McDonald, 57 N. Y. S. (2d) 211; affd., 298 N. Y. 586. We have read the cited opinions, but fail to perceive in them any warrant for approving respondent’s determination. Under them, Gordon conceivably could have made contracts with the authors and the associates in violation of certain provisions of the basic agreement. But he did not do so expressly, and the record rebuts any inference that he intended to do so by implication. Hence, petitioner’s characteristics, in so far as they stem from Gordon’s several contracts, are unaffected by the decisions cited. We are of opinion and hold that petitioner was not constituted and operated in such manner as to make it taxable as a corporation within the meaning of section 3797, and accordingly we reverse the determination of deficiencies and penalties. Decision will be entered for the petitioner.