Trust No. 2 (a trust), Marion Otis Chandler, May C. Goodan, Constance Chandler Crowe, Ruth C. Williamson, Norman Chandler, Harrison G. O. Chandler, Helen C. Garland, and Philip Chandler, Present Trustees v. Commissioner.
Trust No. 2 v. Commissioner
Docket No. 3035.
United States Tax Court
1946 Tax Ct. Memo LEXIS 141; 5 T.C.M. (CCH) 611; T.C.M. (RIA) 46165; July 17, 1946
*141 Stockholders of two separate corporations created a trust and assigned their stock to themselves as trustees for the purpose of insuring "continuity and stability of policy and management." Under the provisions of trust agreement, the net income from the shares of stock is to be distributed to them in the proprtion that the number of shares of each corporation contributed by them bore to the number of shares of each corporation in the trust estate; the shares can only be sold or otherwise disposed of by the unanimous decision of the trustees; the trustees are directed to vote the stock for such directors as will insure the election of Norman Chandler as president and general manager; and in the event of the sale or other disposition of the stock of the two corporations, or their liquidation, and the receipt of property other than stock, the trustees are empowered to retain, sell, lease, and manage such property, and to continue to operate any business in connection therewith for such time as they may deem advisable. During the taxable years there was no sale or other disposition of the stock, and the income of the trust, with the exception of stock dividends, was distributed. Held: *142 The trust is not a joint enterprise for the transaction of business. It is not, therefore, an association taxable as a corporation, or a personal holding company, and is not liable for penalties asserted for failure to file personal holding company returns. A. Calder Mackay, Esq., Arthur McGregor, Esq., and Howard W. Reynolds, Esq., 728 Pacific Mutual Bldg., Los Angeles 14, Calif., and Adam Y. Bennion, Esq., for the petitioners. H. A. Melville, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: This is a petition for redetermination of deficiencies declared by the Commissioner of Internal Revenue involving excess profits, declared value excess profits, personal holding company surtaxes, and 25 percent delinquency penalties claimed from petitioners for the tax years and in the amounts as follows: Declared Value
Personal Holding
Year
Excess-Profits
Excess-Profits
Company Surtax
Penalty
1938
$2,771.51
$ 52,825.00
$13,206.25
1939
$2,748.65
52,825.00
13,206.25
1940
3,236.93
58,107.50
14,526.87
1941
3,183.42
43,505.00
10,876.25
$9,169.00
$207,262.50
$51,815.62
*143 Three fundamental questions are presented: 1. Whether, during all of the taxable years involved herein, Chandler Trust No. 2 was an association taxable as a corporation. 2. Whether, during all of the taxable years involved herein, Chandler Trust No. 2 was a personal holding company. 3. Whether, during all of the taxable years involved herein, Chandler Trust No. 2 is liable for 25 percent delinquency penalties for failure personal holding company returns. Findings of Fact The trustees of Chandler Trust No. 2 filed returns on Form 1041 with the collector of internal revenue for the sixth district of California. The stipulated facts, and the trust agreement attached thereto, are incorporated herein by reference. The trust was created on June 26, 1935, by the execution of a trust agreement. This agreement has never been altered or modified since its execution. At the creation of the trust Marian Otis Chandler, one of the trustors, conveyed to the trust 16,536 shares of Chandis Securities Company and each of the other seven trustees, being the children of Marian Otis Chandler, conveyed two certificates representing 2,694 shares of stock in the Chandis Securities Company *144 and 1 certificate representing fifty shares of the Times-Mirror Company. All of these certificates were then surrendered to the corporations involved and new certificates were issued by said corporations to the trustees for equal amounts of stock. During the years involved the gross cash receipts and expenditures of the trust were as follows: Gross Cash Receipts
1938
1939
1940
1941
Dividends on Times-Mirror Co. stock
$26,950.00
$32,375.00
$35,000.00
$35,000.00
Dividends on Chandis Securities Co. stock
62,918.30
54,343.81
62,501.23
77,692.39
Total
$89,868.30
$86,718.81
$97,501.23
$112,692.39
Expenditures
Office expenses
$ 303.40
$ 295.80
$ 299.86
$ 295.80
California State Income Tax
6,292.03
4,420.00
4,420.00
4,617.76
Total
$ 6,595.43
$ 4,715.80
$ 4,719.86
$ 4,913.56
Net
$83,272.87
$82,003.01
$92,781.37
$107,778.83
During the years involved Chandis Securities Company issued preferred stock as dividends to the trust as follows: 1938
707
1939
707
1940
707
1941
530 These shares were retained by the trust and income tax paid thereon on the basis of $100 taxable income for each preferred share received. *145 All of the other income except an item of $628.83 received from some certificates of beneficial interest connected with the stock in the Times-Mirror Company, was distributed to the beneficiaries. At the creation of the trust on June 26, 1935, Marian Otis Chandler was chosen chairman and Constance C. Crowe was chosen secretary and they still held these positions at the date of the hearing. The principal business of the Times-Mirror Company since 1881 has been the publication of the Los Angeles Times. It has one class of stock, of which 5,760 shares were at the time of the hearing and, for more than ten years prior to the creation of the trust, had been outstanding. A majority of the stock in this company has been held by the descendants of General Harrison Gray Otis, the father of Marian Otis Chandler, for a great many years. The Chandis Securities Company, organized in 1916, is a personal holding company the entire stock of which on the date petitioner was formed was owned by Marian Otis Chandler, a daughter of General Harrison Gray Otis, Harry Chandler, her husband, her seven living children and the estate of a deceased daughter. Chandis Securities Company owned 1935 shares *146 of the 5,760 shares outstanding of the stock of the Times-Mirror Company. The pertinent parts of the trust agreement are as follows: THAT, WHEREAS, the Trustors deem it to be for their best interests, and for the best interests of the Times-Mirror Company and the Chandis Securities Company, that there should be a continuity and stability of policy and management, and to that end that the interests of each of the Trustors in said corporations, as evidenced by the stock severally held by them, be united and vested in the Trustees, as hereinafter provided; and WHEREAS, the Trustors deem it also to be for their best interests that there should be held, conserved, administered and eventually distributed, according to the terms hereof, those assets which are respectively contributed by them to the Trust Estate; * * * Following the above paragraphs are a number of items of instruction directing the trustees to vote the stock in the Times-Mirror Company for directors favorable to Norman Chandler as president of said company unless the trustees unanimously should decide that a different president is desired, whereupon the majority of the trustees shall determine in whose behalf the *147 stock shall be voted. Also it is provided that the stock shall not be pledged, sold or in any way alienated except by the unanimous vote of all the trustees and that no portion of said stock shall be sold except by the unanimous vote of all the trustees and then only in order to salvage the value of the remaining stock. The trustees are also instructed to vote against any stock increase, either in number of shares or classes of stock and not to enter into any voting trust or to deposit their stock with such a trust except by the unanimous vote of all the trustees in Chandler Trust No. 2. Pertinent to all of these instructions is the following provision: In aid of the determination to be arrived at by the Trustees in the situations herein contemplated, it is the Trustors' desire and request that the powers herein conferred, which are contingent upon the unanimous decision of the trustees, shall be exercised only to maintain such a proportionate interest as is now represented in the Times-Mirror Company and Chandis Securties Company, or in the event of an emergency, to protect as much thereof as may be possible under such circumstances; If, however, all provisions for the protection *148 of said stock fail and the interest of the Chandler trustors in said stock is lost, the trustees are instructed as follows: (5) The Trustees, if the shares of stock of the Times-Mirror Company and/or Chandis Securities Company should be sold or otherwise disposed of, or if there should be any liquidation, partial or otherwise, of the assets thereof, or a distribution to the stockholders thereof any proceeds of sale as a result of which assets of substantially different character are received by the Trustees, then and in that event, but not otherwise, are vested with the following additional powers and discretions: Following this instruction a number of powers are enumerated to the trustees granting them authority to proceed in the management of such property with the powers generally exercised by the directors of corporations and following this general enumeration of powers is the following paragraph: The enumeration of these certain powers and discretions of the Trustees, as are set out in this Paragraph (5), shall not be construed as limiting the general powers and discretions herein vested in the Trustees, it being the intent of the Trustors that in the events provided for *149 in this Paragraph the Trustees shall have, and they are hereby vested with, all of the powers and discretions that an absolute owner of property has or may have. The trust is to last until the last survivor of certain beneficiaries named in the trust instrument shall have died. Opinion During the taxable years involved herein, was Chandler Trust No. 2 an association taxable as a corporation? If this question is answered in the negative, judgment must follow for the petitioners. If it is answered in the affirmative, the character of Chandler Trust No. 2 as a personal holding company and its liability for delinquency penalties must receive consideration. The Internal Revenue Code provides: "When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof the term 'corporation' includes associations, jointstock companies, and insurance companies." [1]
In order for trusts to fall within the classification of associations taxable as corporations, petitioners, the respondent, the regulations of the Commissioner and the reported decisions all seem to be in agreement that, since the decision *150 of Morrissey v. Commissioner, 296 U.S. 344 (December 16, 1935), the agreement or document under which trustees are authorized to act must "provide a medium for the conduct of a business and sharing its gains"; [2] and to determine the existence of such a medium, the agreement or document creating the trust must be interpreted by the court in its own terms, not necessarily as the trustees interpret it and the interpretation must not in any way be affected by the failure of the trustees to exercise the powers granted to them. See also Swanson v. Commissioner, 296 U.S. 362; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369; and Helvering v. Combs, 296 U.S. 365. The regulations of the Commissioner *151 on this point practically paraphrase the law as set forth in the above cases. [3]
Respondent claims, however, that the directives imposed on the trustees to vote the trust stock in the Times-Mirror Company for the election of directors who will employ Norman Chandler as president, and the very broad powers granted the trustees in the administration of any property coming to their hands in the event they dispose of the original trust stock, do "provide a medium for the conduct of a business and sharing its gains." Answering the contention of the respondent that the directives to the trustees to vote the trust stock for directors favorable to Norman Chandler constitute a medium for the conduct of a business, the petitioners cite Franklin Title & Trust Co., ( March 28, 1935), 32 B.T.A. 266. In this case the petitioner, as trustee, held almost all of the stock of a corporation; because of which it claimed to be operating the business of the corporation and sought to have itself taxed as a corporation. The decision held, however, that the trust was not an association taxable as a corporation *152 and on page 273 said: * * * A stockholder, as such, has no power to directly manage or control a corporation, and carries on no business. The same is true of these trustees. This trust is a limited voting trust. The trustees, with certain important exceptions, were permitted to vote the stock according to their own best judgment. They were to receive and disburse such dividends as were declared and paid by the two companies. The trustees were not carrying on a business in the sense necessary to constitute them an association taxable as a corporation. Cf. Hecht v. Malley, 265 U.S. 144Dunbar v. Commissioner, 65 Fed. (2d) 447. The respondent questions the applicability of the Franklin Title & Trust Co. case due to the fact that it was decided before Morrissey v. Commissioner, supra, Helvering v. Combs, supra, Helvering v. Coleman-Gilbert Associates, supra, and Swanson v. Commissioner, supra, which were decided on December 16, 1935, and which respondent contends modify the law of the Franklin Title & Trust Co. case. However, all of these Supreme Court cases were first heard and decided by the Board of *153 Tax Appeals during the years 1933 and 1934 which was long prior to the decision of the Franklin Title & Trust Co. case; in all of these cases, except Helvering v. Combs, the decision of the Board of Tax Appeals was the same as that of the Supreme Court. We have also been wholly unable to discover any comment in any of the Supreme Court decisions that holds that a voting trust is such a business operation as to make such a trust taxable as a corporation. It is, therefore, our conclusion that the provisions of the Chandler Trust No. 2, setting up a voting trust, are not sufficient to make that trust taxable as a corporation. To resolve the second contention of the respondent that the broad powers granted the trustees in numerical Paragraph VI of the trust agreement furnish a medium for the transaction of business when and if the stock, or a portion thereof, in the Times-Mirror Company and the Chandis Securities Company is disposed of and property of a different character is acquired, it would be well to examine the purpose of the trust and the limitations imposed upon the exercise of the contingent extraordinary powers by the trustees. The purpose of the trust is twofold: 1. To *154 promote the best interests of the trustors and the two corporations involved by securing a continuity and stability of policy and management of said corporations. 2. To conserve, administer and eventually distribute the assets contributed to the trust estate. The accomplishment of the first purpose would, of course, be wholly defeated when and if the trustees lost control of the trust stock. While that stock is retained, furthermore, the conservation and administration of the trust assets are clearly provided for in the trust agreement. The trustees are to collect the income, pay the taxes and expenses, distribute the remaining cash to the beneficiaries, and treat other types of income either as cash for distribution or as an accretion to principal according to their discretion under certain specific limitation. The prevailing motif of the whole trust agreement expresses the desire on the part of the trustors to retain the corporate stock in the trust so that the Times-Mirror Company and Chandis Securities Company shall remain under the family control which existed at the time of the creation of the trust. Every act of the trustees which would encumber or tend to alienate any *155 of this stock or reduce its relative voting power must receive the unanimous consent of all the trustees. In the taxable years involved, and probably for some time in the future, these trustees were, and shall be, also the trustors and the beneficiaries. Paragraph VI (2) of the trust agreement provides: * * * It is the trustors desire and request that the powers herein conferred, which are contingent upon a unanimous decision of the trustees, shall be exercised only to maintain such a proportionate interest as is now represented in the Times-Mirror Co. and the Chandis Securities Co. The trustors, apparently realizing the limitations on their human powers to visualize the future, could see the possibility of the happening of two eventualities which would make a further pursuit of the prime purpose of the trust impossible. They foresaw that it might become necessary in spite of all plans to the contrary to dispose of the trust stock and, as a further possibility, it might also become necessary for the trustees to accept in liquidation of that stock, property of a character differing from the stock. In the event both of these contingencies should occur a radical change in the normal *156 instructions to the trustees would be necessary. However, if only the first contingency should occur, and the trustees should be given stock in place of stock, it was provided that the trust agreement should proceed as originally devised. If both of these contingencies should occur, and the trustees should find themselves possessed of property foreign in its nature to corporate stock, property which might need active, as distinguished from passive, trusteeship, then the trust agreement provided instructions to the trustees for such active management and granted the trustees sufficient power to conserve and administer the property until the termination of the trust estate by lapse of time. Power to administer the trust property as a business for gain has not yet reposed in any of these trustees. Such power is not now and never has been available for the use of the trustees. Whether it ever comes into existence or not depends entirely upon two conditions precedent clearly set forth in the grant of powers in the trust agreement. These conditions precedent are: (1) the receipt of property by the trustees either from the sale of the corporate stock or from total or partial liquidation *157 of the corporation; and (2) the property received must be of a different character than corporate stock. It is true that the trust agreement confers power on the trustees to sell the trust stock by unanimous agreement, but it could not well be contended that such sale alone would create any new medium for the conduct of business. The trust powers, which would, if actually brought into being, create such a medium for the conduct of business can never exist until a second condition precedent occurs, i.e., the receipt by the trustees of property differing in character from corporate stock. Over the character of the property received in exchange the trustees may or may not have any control, and over the liquidation of the corporation the trustees as such have absolutely no control. Their power to operate a business in the manner of a corporation depends upon contingencies which had not occurred prior to or during the taxable years and if they ever occur may well be beyond the powers of the trustees to create or avert. We have examined the citation in the briefs as well as other authorities not cited and have only been able to find trusts considered as associations taxable as corporations *158 when the powers granted to the trustees create a medium for the transaction of business at the time of the creation of the trust itself. We have found no such case where such powers were granted by the trust instrument but could only come into being after the happening of one or more conditions precedent. In fact we are impressed that if the granting of these contingent powers which were not in operation during the taxable years and which within the realm of reasonable probabilities cannot become operative, are to be construed as granting a present medium for the conduct of a business and sharing its gains, then the creation of a passive trust with any feasible provision for protecting the trust property from unforeseen emergencies will be practically impossible. Obviously the statutory provision permitting the taxation of a trust as an association is designed to reach trusts which are either presently exercising the powers of a corporation or have the future capacity so to do without being controlled or limited in their powers by the happening of a condition precedent. We therefore hold that Chandler Trust No. 2 is not an association taxable as a corporation; and that it is consequently *159 not a holding company and is not liable for delinquency penalties. Judgment will be entered for the petitioners. Footnotes
1. Section 3797 (a)-(c), I.R.C.↩
2. The petitioners' brief contains the following: "A profit motive, a purpose to create a medium for the conduct of a business enterprise, these are the underlying distinctions between a corporation and a traditional trust. The respondent sets up three requirements before a trust can be classed as an association to be taxed as a corporation. One of the three is as follows: "Its purpose must be for the carrying on of a business for profit."↩
3. Articles 901-2 and 901-3 of Regulations 101 and sections 19.3797-2 and 19.3797-3.↩